In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3385

David Sherrod,

Plaintiff-Appellant,

v.

Darlene Lingle, R.N.; Mary Geiger, R.N.;
Betty Lorance, R.N.; C.P. Ramaswamy, M.D.;
Rajendra Shroff, M.D.; Franklin Hospital
District,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois, East St. Louis Division.
No. 97 C 63--David R. Herndon, Judge.

Argued April 5, 2000--Decided July 27, 2000

Before Manion, Kanne and Evans Circuit Judges.

Kanne, Circuit Judge.  David Sherrod suffered a
ruptured appendix and related complications that
required emergency surgery to remove part of his
colon in 1995. He blames these problems on the
medical staff at Big Muddy River Correctional
Center ("BMRCC"), where Sherrod was a prisoner,
and Franklin Hospital District, which operates
the hospital where he was treated. Sherrod
brought a three-count complaint, alleging that
the prison medical staff violated his Eighth
Amendment right to be free from cruel and unusual
punishment and medical negligence against both
the prison and hospital staffs. The district
court dismissed the constitutional claim after
finding that Sherrod had not shown that the
prison medical staff was deliberately indifferent
to his health condition. The state law negligence
claims were dismissed after the court barred
Sherrod's experts as a discovery sanction and
found that he failed to comply with the pleading
and filing requirements of Illinois law. We
affirm the dismissal of the case against
defendant Franklin Hospital District as time-
barred but reverse dismissal of the remaining
counts.

I.  History

Medical care at BMRCC is provided in the Health Care Unit, which is separate from the prisoner cellblocks. The unit has an in-house nursing staff, including defendants Darlene Lingle, Mary Geiger and Betty Lorance, but no full-time resident medical doctors. Instead, the prison employs doctors to serve as medical directors and to visit the health unit on a weekly basis. In 1995, Rajendra Shroff, who was serving as the acting medical director, and C.P. Ramaswamy provided inmate medical care. Sherrod first requested medical attention on March 9, 1995, for pain in his abdomen. Sherrod was taken to the health unit in a wheelchair, examined by Lingle and given an enema, which failed to relieve the pain. Sherrod asked to be taken to a hospital, but Lingle denied the request and admitted him to the health unit for observation.

The pain continued the next day, and Sherrod again asked to be taken to the hospital. Sherrod's symptoms included right lower quadrant abdominal pain, pain on palpation and pain with eating or moving, which can be symptoms of appendicitis. Lingle and Geiger refused to send him to the hospital, but acknowledged the risk of appendicitis with the cryptic note "rule out appendicitis." It is unclear from the record whether this note indicates the nurses had ruled out appendicitis, or were instructing that tests be done to determine whether the symptoms were caused by appendicitis. The nurses communicated with Ramaswamy, who alerted them of the risk of appendicitis, but did not order Sherrod be taken to the hospital./1

On March 11, Sherrod again complained of worsening pain in his abdomen. Geiger again noted "rule out appendicitis" but did not contact a doctor, authorize transportation to the hospital or treat Sherrod's pain. Again on March 12, Sherrod complained of pain, but was not examined by a doctor. Lorance again noted "rule out appendicitis." Sherrod was discharged from the health unit on March 13, although he continued to complain of abdominal pain and lack of bowel activity. Throughout the first several days of Sherrod's illness, his complaints of pain and other symptoms fluctuated from minimal to acute, at times corresponding to the administration of pain medication, as one might expect.

Ramaswamy visited Sherrod in his cell on March 14 to discuss an error in medication. Ramaswamy did not examine Sherrod despite his continuing complaints of abdominal pain. A prison officer ordered Sherrod taken to the health unit on March 16, apparently because his abdominal pain had become severe. Lingle and Geiger reproached the

guards for bringing a patient to the health unit without permission and allegedly said there was nothing wrong with Sherrod. Sherrod was holding his side and walking bent over. There were no bowel sounds and his abdomen appeared swollen, both of which are signs of appendicitis. The nurses admitted him to the health unit, but did not contact a doctor.

On March 17, Shroff sent Sherrod to the emergency room at Franklin Hospital. Sherrod was examined by Dr. Richard O'Hair, who found a mass in the right upper quadrant of Sherrod's abdomen. O'Hair prescribed pain medication and administered the first shot of medication. O'Hair then ordered Sherrod to return for more tests on March 20 and sent Sherrod back to the prison. The next day, the pain had worsened and Sherrod could not stand up. He had an elevated temperature and diminished bowel sounds. A nurse again noted "rule out appendicitis" on Sherrod's chart. The symptoms continued on March 19, but Geiger did not contact a doctor. A nurse contacted Shroff on March 20 and reported that the symptoms continued and asked for approval to send Sherrod to the hospital. Shroff refused, despite O'Hair's order to return Sherrod to the hospital for tests, and directed that Sherrod be given Tylenol No. 3 pain medication. Shroff did not examine Sherrod.

Ramaswamy was told on March 21 that Sherrod had a fever and severe pain. He ordered an abdominal x-ray but never reviewed the x-ray report. Ramaswamy also did not order Sherrod to the hospital, despite Sherrod's symptoms and O'Hair's directions. On March 22, Sherrod was taken to Franklin Hospital and given a barium enema, which revealed a lucent defect at the ascending portion of the colon near the secum. The radiologist recommended a repeat examination. On March 23, Sherrod returned to the hospital for gall bladder and upper gastrointestinal tests. Ramaswamy told Sherrod that the results were negative and there was nothing medically wrong with him. Sherrod asked to be taken to a different hospital, but Ramaswamy refused. On March 24, Sherrod's blood pressure had dropped to 92/70 and he was stooped over in intense pain. Sherrod was taken to St. Mary's Hospital where emergency surgery was done for a ruptured appendix and a gangrenous bowel. Afterward, Lorance admitted that she knew Sherrod had been suffering from appendicitis.

In January 1997, Sherrod filed a three-count complaint in federal district court against the prison medical staff, Franklin Hospital and the hospital's medical staff. Count One of the complaint alleged, pursuant to 42 U.S.C. sec. 1983, that the prison medical staff deprived Sherrod of adequate medical care in violation of

the Eighth Amendment. Counts Two and Three averred pendent state-law claims of medical malpractice against the prison doctors, O'Hair and Franklin Hospital. A physician's report and certificate of merit were attached to the complaint as required by Illinois law. The physicians and Franklin Hospital sought dismissal of the complaint on the ground that the physician's report was inadequate. On November 5, 1997, District Judge J. Phil Gilbert agreed with the defendants and dismissed Count Three with leave for Sherrod to amend, which he did on November 26, 1997, with a new physician's report. On December 5, 1997, Judge Gilbert dismissed Count Two against the prison doctors on the same ground, but without leave to amend.

On November 18, 1997, the magistrate entered a pretrial discovery order directing that all discovery be completed by June 5, 1998. The court extended that time limit to December 30, 1998, and both sides continued taking depositions through early December. There were difficulties and delays in taking the defendants' depositions, which delayed the completion of the plaintiff's experts' reports. Before the deadline, Sherrod released his list of experts to testify at trial, but did not disclose the experts' reports, believing that Rule 26(a)(2) of the Federal Rules of Civil Procedure only required disclosure of expert opinion reports ninety days before trial.

On a motion for summary judgment, District Judge David R. Herndon dismissed Count One after finding that Sherrod could not prove the prison staff had shown deliberate indifference to his medical needs. The district court also granted summary judgment on Count Three for Franklin Hospital District, finding that the allegations against the hospital did not constitute such gross negligence as to excuse the plaintiff's state-law duty to present expert testimony. Since Sherrod's experts had been barred as a discovery sanction, he could not meet the proof requirements to prevail on the malpractice claim.

II. Analysis

With judgment entered on all three counts, Sherrod appeals the grant of summary judgment on Counts One and Three, the exclusion of his medical experts that led to the judgment on Count Three and the dismissal of Count Two. We review de novo a district court's entry of summary judgment, accepting the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999). Discovery sanctions for failure to comply with Rule 26(a)(2) are reviewed for abuse

of discretion. See Miksis v. Howard, 106 F.3d 754, 758 (7th Cir. 1997). A court does not abuse its discretion "unless one or more of the following circumstances is present: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." Id. (quoting Gile v. United Airlines, 95 F.3d 492, 495 (7th Cir. 1996)).

A.  Deliberate Indifference

The district court granted summary judgment on Count One, a decision we review de novo. Chavez v. Cady, 207 F.3d 901, 902 (7th Cir. 2000). Summary judgment may be granted only when there exist no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. If after our plenary review of the record, we find that a genuine issue of material fact exists, we will reverse the summary judgment and order a trial. See Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999).

To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Dunigan ex rel. Nyman v. Winnebago County, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. See Reed, 178 F.3d at 852 (citing Dunigan, 165 F.3d at 590).

The district court found that an inflamed appendix is objectively serious, and there is no reason to doubt that ruling. A condition is objectively serious if the failure to treat it "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (quoting McGuckin v. Smith, 974 F.3d 1050, 1060 (9th Cir. 1992)). As we found recently in a very similar case, an appendix on the verge of rupturing easily meets this standard. See Chavez, 207 F.3d at 905 (affirming ruling that an inflamed appendix is a serious medical need).

The subjective standard requires the court to find that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Whether a prison employee acted with deliberate indifference presents a question of fact. See Maclin v. Freake, 650 F.2d 885, 889 n.3 (7th Cir. 1981). The district court ruled that the prison medical staff "did not simply ignore Sherrod" because he "received continuous medical treatment by Defendants." The district court erred in two respects.

First, the district court impermissibly resolved questions of material fact in favor of the defendants and relied on those to determine that the prison medical staff did not show deliberate indifference. In its very brief discussion of the issue, the district court found that Sherrod's symptoms on March 10, 1995, "did not match those of appendicitis." Because Sherrod's condition worsened in the ensuing days, the requisite excessive risk to his health may have arose and been disregarded sometime between March 10 and March 24, when he finally received the appropriate treatment for his condition. Focusing solely on the symptoms as they appeared on March 10, constituted reversible error.

Also, Sherrod's symptoms clearly matched some of the symptoms of appendicitis after March 9, when he first complained to the medical staff. He had abdominal pain in the right lower quadrant on March 10, which first tipped the medical staff to the possibility of appendicitis, and later exhibited other symptoms including diminished bowel activity, a swollen abdomen, an elevated temperature and worsening pain. The absence of some symptoms might convince a jury that the risk of a ruptured appendix was not sufficiently known or disregarded, but the district's court's finding that his symptoms "did not match those of appendicitis," resolved a genuine factual issue in the defendants' favor.

Evidence also showed that the defendants knew there was a risk of appendicitis, which they continually documented in his charts. A jury could understand the notation "rule out appendicitis" to mean that sufficient tests should be performed to eliminate that as a potential cause of Sherrod's pain. However, the staff never performed the tests needed to rule out appendicitis. If they had, they would have discovered Sherrod did in fact have appendicitis. Evidence also suggests Sherrod may not have been examined by a doctor until several days after his first complaint, yet the district court resolved this question in the defendants' favor as well. That Sherrod's condition was not ameliorated by the liquid diet, enemas and pain pills prescribed by the medical staff also could have indicated a

known risk of appendicitis. The district court found these measures indicative of the staff's attention to his condition, but a jury could have reasonably found them to indicate disregard of a serious risk to Sherrod's health. The evidence, when resolved in Sherrod's favor, raises questions of material fact as to whether the prison medical staff exhibited deliberate indifference by returning Sherrod to his cell despite the appendicitis symptoms, thereby precluding summary judgment for the defendants.

Second, while Farmer does not permit claims for mere negligence, 511 U.S. at 835, or claims alleging that a reasonable medical judgment unfortunately led to a bad result, see Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996), a prisoner is not required to show that he was literally ignored by the staff. If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not "simply ignored." The question mandated by Farmer is whether the official knew of and disregarded an excessive risk to the inmate's health, not whether the inmate was ignored. The district court's analysis emphasizes the fact that "defendants did not simply ignore" Sherrod, which misconstrues the Farmer standard. Applying the appropriate test, and recognizing that Sherrod has presented evidence which might prove that the prison staff knew of and disregarded a serious risk to his health, precludes the entry of summary judgment as to Count One.

B.  Discovery Sanctions

Sherrod's experts, Drs. Satish Kapoor and Alfred Frankel, were excluded as a sanction for Sherrod's failing to disclose their reports to the defendants by December 30, 1998, the date scheduled for the close of all discovery. Sherrod contends the district court abused its discretion by imposing the sanction even though he had substantially complied with the terms of Rule 26(a)(2).

Rule 26(a)(2)(C) directs each party to disclose its expert opinion reports "at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C). In the absence of other directions from the court, "the disclosures shall be made at least 90 days before the trial date . . . ." Id. The reports must contain, among a list of other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B). The magistrate's initial discovery order directed

that "[a]ll discovery shall be completed by June 5, 1998," but the district court later extended the deadline to December 30, 1998. The order was not specific as to whether the disclosure of expert opinion reports was to take place before December 30, 1998, or simply ninety days before trial as allowed by the rule. Because no trial date was set, Sherrod did not believe he needed to disclose the reports. However, Sherrod disclosed the names of both experts and their preliminary reports before the deadline. Sherrod wished to supplement the preliminary reports once his experts were able to review the deposition testimony of the defendants and other witnesses, which did not occur until shortly before the discovery deadline. He moved to reopen discovery after December 30 so that he could file the updated reports, but the request was denied.

Instead, the district court imposed sanctions under Rule 37(c)(1), which states that a "party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). We review for abuse of discretion a district court's ruling to exclude expert witnesses as a sanction under Rule 37. See Salgado v. General Motors Corp., 150 F.3d 735, 739 (7th Cir. 1998). However, we recognize that in a case such as this where exclusion necessarily entails dismissal of the case, the sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." Id. at 740. Reflecting this principle, Rule 37 precludes the trial judge from imposing the exclusion sanction unless it finds the party's failure to comply with Rule 26(a) was both unjustified and harmful to the opposing party. See Fed. R. Civ. P. 37(c)(1).

First, we reject Sherrod's argument that the discovery order did not include the disclosure of the expert's reports. Rule 26(a)(2)(C) sets the timetable for expert disclosures at least ninety days before trial "[i]n the absence of other directions from the court." Fed. R. Civ. P. 26(a)(2)(C). The order clearly stated "[a]ll discovery shall be completed" by December 30, and the rules indicate no reason that a court when it says "all" must also then specify what "all" means. An order setting a deadline for "all discovery" constitutes "other directions from the court," and therefore the deadline for disclosure of the experts' reports was December 30. Furthermore the reports must be "complete" and include the information specified in Rule 26 (a)(2)(B). Preliminary reports, such as those

supplied by the plaintiff, do not satisfy the express terms of the rule, and we decline plaintiff's suggestion that we graft a "substantially complied" standard onto this requirement. See Salgado, 150 F.3d at 741 n.6.

However, on the facts of this case, we find the imposition of this drastic sanction unjustified considering the harmless nature of the plaintiff's failure to comply with the discovery order. The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case. See Fed. R. Civ. P. 26(a)(2) advisory committee's note (stating that expert disclosure rule intended to give opposing parties "reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."); Gorby v. Schneider Tank Lines, Inc., 741 F.2d 1015, 1018 (7th Cir. 1984); see also Klonoski v. Mahlab, 156 F.3d 255, 271 (1st Cir. 1998). In this instance, Sherrod disclosed the names of both retained experts and their initial reports well before the deadline, thus preventing the chance that unfair surprise would hamper the defendants' preparation of the case. The trial still appeared a long way off, and the defendants had plenty of time to prepare their examinations of Sherrod's experts. Furthermore, because both sides were at fault for the difficulties in scheduling depositions, which pushed discovery up to the December deadline, the delay in finishing the experts' reports was partially justified. While in most cases, a district court would be fully within its discretion in strictly applying the rules and excluding reports that were incomplete or submitted a day late, see, e.g., Salgado, 150 F.3d at 742, in this instance we can see no harm that came from Sherrod's failure to meet the December 30 deadline. Because Rule 37 does not require sanctions against a non-disclosing party if that party's violation was harmless, the district court abused its discretion by excluding Sherrod's experts without any indication that the defendants had been harmed by his discovery violation.

C.  Certificate of Merit

The district court dismissed Count Two on the alternative ground that Sherrod failed to file an adequate physician's certificate of merit with his complaint as required by Illinois law. Sherrod filed a single certificate as to all defendants, which the district court found to be insufficient under Illinois law.

To minimize frivolous malpractice suits, Illinois law requires the plaintiff to file a physician's certificate of merit and accompanying report with every malpractice complaint. See 735 Ill. Comp. Stat. 5/2-622; McCastle v. Sheinkop, 520 N.E.2d 293, 294 (Ill. 1987). The certificate must affirm that a qualified, licensed physician has reviewed the case and determined that "there is a reasonable and meritorious cause for the filing of such action." 735 Ill. Comp. Stat. 5/2-622. A certificate and report must be filed "as to each defendant who has been named in the complaint." Id. Failure to abide by this requirement "shall be grounds for dismissal." Id. While dismissal is mandatory, courts have discretion to dismiss with or without leave to amend. See McCastle, 520 N.E.2d at 296.

In dismissing Count Two with prejudice, the district court erred in two respects. First, Illinois courts liberally construe certificates of merit in favor of the plaintiff, recognizing the statute as a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, not a likelihood of success. See Cammon v. West Suburban Hosp. Med. Ctr., 704 N.E.2d 731, 738-39 (Ill. App. Ct. 1998); Mueller v. North Suburban Clinic, Ltd., 701 N.E.2d 246, 250 (Ill. App. Ct. 1998). In Mueller, the court affirmed the dismissal of a complaint because even though the certificate and report mentioned all the defendants in an introductory sentence, only one defendant was mentioned again. Id. at 253-54. Other courts have found the statute satisfied by a single report against multiple defendants if the report is "sufficiently broad to cover each defendant, adequately discusses deficiencies in the medical care given by defendants, and establishes that a reasonable and meritorious cause exists for filing the action." Neuman v. Burstein, 595 N.E.2d 659, 664 (Ill. App. Ct. 1992); see also Brems v. Trinity Med. Ctr., 693 N.E.2d 494, 497 (Ill. App. Ct. 1998). Kapoor's report was not a model of specificity. It mentioned only Shroff, Franklin Hospital and St. Mary's Hospital by name, but referred generally and repeatedly to the prison nursing and medical staff. Kapoor's three-page report discussed Sherrod's symptoms and course of treatment in some detail. It then concluded that the "prison medical and nursing staff failed to properly diagnose his illness in a timely fashion" because of a lack of physician supervision and applied improper treatment which placed Sherrod's life in jeopardy. This report, while not wholly insufficient, certainly approached the borderline of acceptable detail in a physician's merit review.

Second, while the decision to dismiss with or

without prejudice is left to the sound discretion of the court, see McCastle, 520 N.E.2d at 295, Illinois courts have held that when a plaintiff fails to attach a certificate and report, then "a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice." Cammon, 704 N.E.2d at 739; see also Apa v. Rotman, 680 N.E.2d 801, 804 (Ill. App. Ct. 1997). It follows that when the certificate was filed but failed in some technical or minor respect, sound discretion also requires an opportunity to amend. See Apa, 680 N.E.2d at 804 (holding that "the technical requirements of the statute should not be mechanically applied to deprive a plaintiff of his substantive rights."). Here, for reasons that are unclear, the district court dismissed Counts Two and Three for failure to comply with the certificate requirement, but granted leave to amend only for Count Three. We agree that refusing to allow Sherrod to amend Count Two to comply with the Illinois certificate requirement constituted an abuse of discretion.

D.   Statute of Limitations

In granting summary judgment for Franklin Hospital District on the expert witness issue, the district court did not consider the hospital's argument that Sherrod's claim also was barred by the Illinois statute of limitations for medical malpractice suits against a local government agency. 745 Ill. Comp. Stat. 10/8-101. We will uphold summary judgment on any ground that the record supports. See Simmons v. Pryor, 26 F.3d 650, 653 (7th Cir. 1993).

Illinois law prohibits any civil action against a "local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8-101. The one-year limit overrides the two-year statute of limitations for medical malpractice claims, 735 Ill. Comp. Stat. 5/13-212(a). See Tosado v. Miller, 720 N.E.2d 1075, 1081 (Ill. 1999). The malpractice claim here arose in March 1995, more than a year before Sherrod filed the complaint in January 1997. The medical malpractice claim against Franklin Hospital District is barred by the statute of limitations.

III.   Conclusion

Because we find questions of material fact as to whether the prison medical staff acted with deliberate indifference, the district court's grant of summary judgment on Count One is Reversed.

The district court's order barring Sherrod's experts and granting summary judgment on Count Two is Reversed, and Sherrod shall be given reasonable additional time to file the required expert reports. Count Three against Franklin Hospital District is Dismissed for failure to comply with the state statute of limitations. The case is Remanded to district court for additional proceedings consistent with this opinion.

/1 The case record is unclear as to whether Ramaswamy actually examined Sherrod on March 10. The district court's order indicates that Ramaswamy did examine Sherrod during the daily sick call. However, the briefs for both Sherrod and Ramaswamy indicate that Ramaswamy consulted with the nursing staff, but did not see Sherrod personally. The record is rife with other ambiguities and contradictions, which for the purpose of a summary judgment order, we will construe in the light most favorable to the plaintiff.