Corey L. PORTER Plaintiff–Appellant,

v.

Roger HELBLING, Defendant–Appellee.

No. 00–3888.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 17, 2001 *.

Decided Sept. 4, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before Hon. MANION, Hon. ILANA DIAMOND ROVNER, Hon. TERENCE T. EVANS, Circuit Judges.

## ORDER

Indiana prisoner Corey Porter sued under 42 U.S.C. § 1983, alleging that a correctional counselor violated his Eighth Amendment rights by failing to protect him from an attack by another prisoner. The district court granted summary judgment to the defendant. Porter appeals, and we affirm.

When these events allegedly took place, Porter was housed in the "G Cell House" of the Pendleton Correctional Facility in Pendleton, Indiana. On January 12, 1999, Porter had an argument with a prisoner housed in an adjacent cell—David Allen, known to Porter as "Little Pee"—during which Allen threatened to harm Porter. Later that day Porter told his correctional counselor, defendant Roger Helbling, about the threat and asked Helbling to move him to another cell. According to Porter, Helbling acted unconcerned and responded by laughing and telling Porter that he was bigger than Allen. Nonetheless, Helbling told Porter to put his request in writing so that Helbling would not forget about it, which Porter did the next day on January 13. Helbling responded to Porter's written request by telling him that he had no authority to move prisoners and that Porter should tell his case manager, who did have such authority, about Allen's threat. Helbling himself also told Porter's case manager about the threat and Porter's request to be moved. Allen threatened Porter again in February 1999, which prompted Porter to submit a written request to another counselor, Tim Greyhouse, to be moved to another cell. All of the counselors then informed Porter that no prisoners were being moved at that time. In May 1999 Allen threatened Porter again, but the record contains no evidence that Porter told anyone about this threat. Later that same day, Allen stabbed Porter in the hand with a knife while the two prisoners were in the recreation yard.

In August 1999 Porter filed this lawsuit alleging that Helbling knew of and consciously disregarded the risk that Allen would harm Porter. When Helbling moved for summary judgment, Porter filed a declaration stating that, in addition to ignoring Porter's pleas for help, Helbling failed to follow an Indiana Department of Corrections ("DOC") policy that required him to notify Porter's case manager in writing of Allen's threats and, if that did not resolve the problem, to notify the unit team manager. Porter also attached to his declaration the job description for a correctional counselor, which states:

> The Correctional Counselor serves as an active participating member of Unit Team Classification and Disciplinary Committees. Classification Committees for offender program assignments, *transfers,* annual reviews, administrative hold, administrative idle, and administrative segregation are completed as re-

quired by policy or Unit supervisory staff. (Emphasis supplied).

The district court granted summary judgment to Helbling, concluding that Porter failed to present any evidence that he faced a sufficiently serious risk of harm because "there was no impending harm to Porter in either January or February of 1999." The court also concluded that Porter failed to present evidence that Helbling consciously disregarded a risk of harm to Porter; that Helbling took reasonable steps to prevent harm to Porter when he made sure that Porter's case manager was aware of Allen's threats and Porter's request to be moved.

On appeal Porter contends that he raised a question of fact as to whether Helbling acted with deliberate indifference by presenting evidence that Helbling turned a "blind eye" when Porter told him about Allen's threats. Porter highlights two pieces of evidence: (1) that Helbling acted unconcerned when Porter reported the threats, and (2) that Helbling failed to notify the proper officials about the threats as, Porter says, Helbling knew he was required to do. In our de novo review we evaluate the record in the light most favorable to Porter, drawing all reasonable inferences in his favor. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir.2000). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

■ The Eighth Amendment requires officials to protect prisoners from harm at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 843–44, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir.2001). To prevail on a failure-to-protect claim, the prisoner must show that he was incarcerated under conditions presenting a substantial risk of serious harm and that the defendant acted with deliberate indifference toward that risk. *Farmer* 511 U.S. at 834; *Mayoral*, 245 F.3d at 938. A substantial risk of serious harm exists when the defendant's action or omission results in "the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotation marks and citation omitted). An official acts with deliberate indifference when he knows of and disregards a substantial risk. *Id.* at 838; *Mayoral*, 245 F.3d at 938.

■ Porter's claim fails because, even if he could raise an issue of fact as to whether the risk he faced from Allen was sufficiently serious, the record contains no evidence that Helbling acted with deliberate indifference. Officials who take reasonable steps to prevent a known harm to a prisoner cannot be held liable for subsequent injuries even if the harm is not averted. *See Farmer*, 511 U.S. at 844; *Doe*, 110 F.3d at 524. Based on the record evidence, Porter reported Allen's threats to Helbling twice—on January 12 and 13, 1999.[1] It is undisputed that Helbling responded by reporting Allen's threats and Porter's request to be moved to a person with authority to move Porter—Porter's

---

**1.** In responding to the summary judgment motion, Porter submitted several handwritten "statements" from other prisoners which state that Porter "repeatedly" complained to "the counselors" about Allen's threats and requested to be moved. These "statements" are not evidence; they are unsworn, *see Du-*

*gan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 n. 4 (7th Cir.1998), and do not mention Helbling's name. Additionally, in responding to Helbling's interrogatories, Porter admitted that he reported Allen's threats to Helbling only on January 12 and 13, 1999.

case manager.[2] The record contains no evidence that Helbling knew of any special characteristics of Allen or Porter that could lead to an attack (*e.g.*, gang affiliation, propensity toward violence). *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir.2000) (plaintiff can establish requisite state of mind by showing defendant's awareness that prisoners have particular characteristics that pose heightened risk) (citing cases). Helbling thus did not turn a "blind eye" to the risk Porter faced. Even assuming that Helbling violated DOC policy by failing to notify Porter's case manager of Allen's threats in writing[3], at most this fact would demonstrate that Helbling acted negligently. But as we have said repeatedly, negligence falls short of deliberate indifference. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Mayoral*, 245 F.3d at 938; *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir.1999). Porter failed to raise an issue of material fact regarding whether Helbling acted with deliberate indifference.

AFFIRMED.

2. As Helbling observes on appeal, the counselor job description Porter submitted does not establish that Helbling had the authority to move Porter to another cell; instead it states that transfers are completed "as required by policy or Unit supervisory staff." The job description differentiates between counselors and the "Unit supervisory staff" to whom counselors report.

3. The DOC policy Porter submitted concerns the standards for admitting prisoners to pro-

tective custody. We note that the record contains no evidence that the policy applies here because Porter does not contend that his request to be moved to another cell was actually a request to be placed in protective custody. Assuming Porter made such a request, however, our review of the policy Porter submitted reveals no requirement that Helbling notify other staff members in writing or that he notify the unit team manager.