**Mariam Sheree CAIRELLI, Administrator, Estate of Albert R. Cairelli, Sr., Plaintiff–Appellant,**

v.

**Mohammed M. VAKILIAN, Defendant–Appellee.**

No. 02–3474.

United States Court of Appeals, Sixth Circuit.

Nov. 17, 2003.

William M. Saks, Cleveland Heights, OH, for Plaintiff–Appellant.

Carol Hamilton O'Brien, Attorney General of Ohio, Columbus, OH, Dawn M. Tarka, Corrections Litigation Section, Cleveland, OH, for Defendant–Appellee.

Before: SUHRHEINRICH, COLE and ROGERS, Circuit Judges.

## OPINION

ROGERS, Circuit Judge.

In this action under 42 U.S.C. § 1983, the plaintiff, Mariam Sheree Cairelli, appeals the district court's grant of summary judgment for the defendant Dr. Mohammed M. Vakilian.[1] Ms. Cairelli alleges that her father, Albert Cairelli, Sr. ("Cairelli"), a prisoner in the custody of the State of Ohio, died because Dr. Vakilian was deliberately indifferent to Cairelli's serious medical condition in violation of his civil rights under the Eighth and Fourteenth Amendments. The sole issue presented for our review is whether Ms. Cairelli produced sufficient facts showing deliberate indifference to survive a motion for summary judgment. Because we conclude that she has not, we affirm the judgment of the district court.

## I. BACKGROUND

### A. Facts

Cairelli, an inmate at the Mansfield Correctional Institution ("ManCI") in Mansfield, Ohio, died of a heart attack on November 25, 1988. Two days earlier, at about 5:00 p.m., Cairelli first presented himself to the prison infirmary complaining of shortness of breath and pain in his chest and left arm. Leonard Jorz ("Jorz"), a nurse in the infirmary, examined Cairelli and completed an "Unusual Incident Report." In that report Jorz included a medical history of Cairelli and noted that (1) Cairelli was a 55 year old male, (2) Cairelli's father died at 44 from a heart condition, (3) Cairelli smoked 5 or 6 cigarettes a day, (4) he had reported experiencing chest pains over the prior two or three weeks, (5) and he had experienced chest pain when "walking/trotting" to the mess hall. Jorz also noted that Cairelli was six feet three inches tall and weighed 255 pounds, and that Cairelli had a history of high cholesterol. The history also included a report of an electrocardiogram test ("EKG") performed in March of 1998, which was "normal."

After completing the Unusual Incident Report, Jorz completed a chest pain questionnaire with Cairelli. According to the questionnaire, Cairelli was not suffering from any respiratory difficulty, his color was pink, his skin turgor was good, and his skin was warm and dry. His pain was not sharp and stabbing, but felt like dull and aching pressure. Cairelli had burning sensations in his left arm, but no pain with respiration. The pain lasted 4 to 5 minutes, and then subsided. It began when Cairelli was rushing to the mess hall, but it had decreased since then.

Jorz then ran a series of EKG tests on Cairelli.[2] The results of the first EKG were normal, but the second produced a computer generated reading that stated: "sinus rhythm; non specific intraventricular block; QRS(T) contour abnormality; cannot rule out high lateral infarct. Unconfirmed report."[3] The third EKG produced a similar reading, which stated: "sinus rhythm, QRS(T) contour abnormality; cannot rule out high lateral infarct. Unconfirmed report." At 5:45 p.m., after the EKG testing was complete, Cairelli told Jorz that he was feeling "great now."

1. Dr. Vakilian has died since the initiation of this litigation and S.A. Vakilian, the administrator of Dr. Vakilian's estate, has been substituted as defendant.

2. Jorz testified at his deposition that the manual for the EKG machines stated that the results generated by the computer printout ("cannot rule out high lateral infarct") were generally 15 percent accurate. JA at 165–67.

3. Jorz testified that "unconfirmed report" simply means that the message was generated by the computer rather than a doctor. JA at 161.

Jorz contacted Vakilian after completing the assessment of Cairelli. Vakilian was on-call, but not physically present at the infirmary. After Jorz described the nature of Cairelli's symptoms, his history, the chest pain assessment, and the results of the EKGs, Vakilian instructed Jorz to give Cairelli two Tylenol, admit Cairelli to the infirmary for observation, and notify him if Cairelli's condition changed. At 6:00 p.m., Cairelli was admitted to the infirmary for observation. Cairelli denied feeling any discomfort when he was admitted. Later in the evening, he continued to be symptom-free and stated that he regretted going to the infirmary because his cell was more comfortable than the infirmary.

At 3:30 a.m., Cairelli again complained of chest pain. The nurse on duty at the time noted that Cairelli's color was pink, his skin was warm and dry, his respiration was regular and easy, but he appeared agitated. Cairelli was vague about the location of his chest pain, denied experiencing any nausea, and stated that his pain was "a burning type." The nurse offered him an antacid. After taking two Mylanta, Cairelli appeared more relaxed and indicated to the nurse that stress might have caused the problem. Cairelli did not report any further symptoms for the rest of the night.

The next day, Vakilian examined Cairelli at 2:15 p.m. Cairelli told Vakilian and Nurse Jackson, ManCI's Health Care Administrator, that he was feeling better and in no pain. He requested that he be released from the infirmary so that he could return to his cell. After examining Cairelli, Vakilian discharged him from the infirmary, ordered a cardiac enzymes test, and prescribed one tablespoon of Pepto Bismol to be taken at bedtime. Vakilian did not order the cardiac enzymes test to be expe-

dited; had he done so, the results would have come back within hours. Because he did not do so, and because of the Thanksgiving holiday, the results would not be available for another four to six days.

Cairelli was discharged from the infirmary on the morning of November 25, 1998. After returning to his cell, Cairelli reported to his cellmate, Albert R. Cairelli, Jr. ("Cairelli, Jr."),[4] that he was experiencing shortness of breath and chest pains. A few hours later, Cairelli again felt short of breath and experienced some chest pains, but neither he nor Cairelli, Jr. reported the pain to the corrections officer on duty.

Shortly before 3:30 p.m., Cairelli, Jr. and some other inmates noticed that something was wrong with Cairelli. Cairelli, Jr. notified a corrections officer, Richard Jones ("Jones"), while two other inmates began to perform CPR on Cairelli. Jones called the infirmary at about 3:27 p.m., and an ambulance arrived moments later. The infirmary staff took over CPR at this point and Vakilian arrived with another doctor, Kasib Aziz ("Aziz"), a few minutes after that. It was, however, too late; Cairelli was pronounced dead at 3:40 p.m.

An autopsy showed that the cause of death was acute ventricular arrhythmia. The coroner's report noted that "[b]oth the left anterior descending coronary artery and right coronary artery have severe calcific atherosclerosis." The report also indicated that these arteries were more than 95 percent blocked.

## B. Procedural History

On March 30, 2000, Ms. Cairelli, in her capacity as administrator of her father's estate, filed suit in the district against Vakilian, Jorz, Jones and Aziz, alleging that the defendants had been deliberately

4. Albert Cairelli, Jr. is Cairelli's biological son, but the younger Cairelli was adopted by another family and no longer has any legal relationship to Cairelli.

indifferent to the serious medical needs of Cairelli, causing unnecessary suffering and wrongful death in violation of the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983. She retained an expert, Howard Rowen, M.D., who reviewed the record and initially opined that Vakilian's performance constituted a "lack of appropriate medical care" and "[fell] far below community standards present at the time and represents what appears to be total indifference to a documented high risk potentially lethal situation." At his deposition, Dr. Rowen revised his opinion somewhat, testifying that "Mr. Cairelli received grossly inadequate care which I think very likely contributed to his death."

On March 20, 2001, Ms. Cairelli moved for voluntary dismissal of her claims against Aziz and Jorz. Subsequently, Jones and Vakilian moved for summary judgment, which the district court granted on April 12, 2002. After reviewing several cases where inmates or their estates brought Eighth Amendment actions against medical staff in circumstances similar to those presented in this case, the district court reasoned that, at worst, Dr. Vakilian misdiagnosed the source of Cairelli's pain. The district court concluded that even though Dr. Vakilian's treatment of Cairelli may have fallen far below community standards, no reasonable jury could, under the facts alleged, determine that Dr. Vakilian was deliberately indifferent to Cairelli's serious medical needs in violation of the Eighth Amendment. The district court made a similar conclusion with respect to Jones. The district court therefore determined that summary judgment was appropriate for both defendants. Ms. Cairelli timely filed a notice of appeal of the judgment in favor of Vakilian; she does not appeal the district court's judgment with respect to Jones.

## II.  DISCUSSION

### A.  Standard of Review

A court of appeals reviews a decision to grant summary judgment *de novo*. *Tinker v. Sears Roebuck & Co.*, 127 F.3d 519, 521 (6th Cir.1997). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Generally, the burden is on the moving party to show that no genuine issue of material fact exists. *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). However, the moving party does not necessarily have to produce evidence showing the absence of a genuine issue of material fact. Instead, "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the [ ] court–that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In summary judgment the facts as well as any inferences that can be drawn from them must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether a factual issue is genuine for purposes of summary judgment in most civil cases, a court must decide "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B.  General Legal Framework

To prevail on a claim under 42 U.S.C. § 1983, the plaintiff must show that (1) the

conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

The parties do not dispute whether Vakilian acted under color of state law; this case turns on whether he deprived Cairelli of "rights, privileges or immunities" secured under the Eighth and Fourteenth Amendments–specifically, his right to be free from cruel and unusual punishment. To prove her claim within this context, Ms. Cairelli must establish that Vakilian deprived her father of medical care so necessary that the failure to do so deprived Cairelli of his rights under the Eighth Amendment. She must prove two elements to do so. The first is that, in an objective sense, the deprivation of medical care is serious. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In other words, there is an objective requirement that there be a substantial risk of serious harm. *Id.* Secondly, she must prove, in a *subjective* sense, that Vakilian was deliberately indifferent to Cairelli's health or safety. *Id.* The plaintiff must prove that Vakilian was aware of and ignored "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In emphasizing the subjective nature of this inquiry, the Court further noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

To establish deliberate indifference, then, the plaintiff must show more than mere negligence or the misdiagnosis of an ailment. *Id.* at 835 (explaining that "deliberate indifference describes a state more blameworthy than negligence"); *see also Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (explaining that negligence "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). Evidence that would otherwise be sufficient to establish a common law medical malpractice claim is insufficient under this paradigm; on the contrary, the plaintiff must show some intent indicating a reckless disregard of a substantial risk of serious harm. *Farmer,* 511 U.S. at 836. The recklessness standard that we apply is that of the criminal law, permitting "a finding of recklessness only when a person disregards a risk of harm of which he is aware." *Id.* at 837.

The parties do not dispute that the risk of harm to Cairelli's health condition was substantial; after all, the tragic result was Cairelli's death. Nevertheless, the plaintiff cannot recover unless she can establish that Vakilian, from all the facts available, actually drew the inference that Cairelli faced a substantial risk of harm to his health and safety. She must also establish that, drawing this inference, Vakilian so recklessly ignored the risk that he was deliberately indifferent to it. We are unconvinced that she can demonstrate either.

C.  *Plaintiff cannot produce sufficient evidence to show that Vakilian actually drew the inference that Cairelli faced a substantial risk of harm.*

Initially, the plaintiff bears the burden of showing that Vakilian perceived sufficient facts to draw the inference that Cairelli was at substantial risk of serious harm. The record suggests that Vakilian did per-

ceive sufficient facts. He was aware of Cairelli's age, weight, personal health history and smoking habit because Jorz collected that information in Cairelli's patient history. Vakilian was aware that Cairelli was experiencing chest pain. He was also aware of two EKG exams that suggested Cairelli may have been suffering from a high lateral infarct. There is no dispute that Vakilian either read these facts himself, or was briefed on them by Jorz. There is no question that Vakilian was aware of facts necessary to perceive that Cairelli was at risk.

Although the facts available to Vakilian at the time may have suggested, even to the lay person, that Cairelli was suffering from a heart attack, this fact alone does not absolve the plaintiff of the burden of establishing that Vakilian *actually drew the inference* that Cairelli was at substantial risk of serious harm. Plaintiff cannot establish her claim simply by showing that Vakilian *objectively should have drawn* the inference. *See Farmer,* 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment."). Plaintiff may establish her claim on a showing that the facts available to the prison official made the risk to the inmate's health or safety *obvious. Farmer,* 511 U.S. at 842. If the risk was obvious, Vakilian may still avoid liability if he was unaware of the risk. *Id.* at 844. Even if he was unaware of the obvious risk, he is not absolved of an Eighth Amendment violation if he "refused to verify underlying facts that he strongly suspected to be true or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n. 8.

In large part, this case turns on whether Cairelli's symptoms manifested an obvious risk. Admittedly, this is a question that is close to being one on which rational minds could differ. That Cairelli was suffering from a heart attack was one of a number of conclusions that Vakilian could have drawn from Cairelli's symptoms and medical history. Perhaps it was the most obvious conclusion, both to other physicians and to lay people. Even if that is true, however, the plaintiff's assertion that Vakilian was aware of an "excess [sic] risk of death" is inconsistent with the facts. Plaintiff has failed to show that Vakilian subjectively perceived that risk. While Vakilian perceived facts that indicated to him that Cairelli's symptoms could be an indication of heart problems, the facts also indicate that Vakilian inferred that it was more likely that Cairelli was suffering from gastrointestinal distress. The fact that this conclusion was incorrect, or even unreasonable, does not affect our analysis.

Certainly, where a prison doctor's response to an obvious risk to an inmate's health is patently unreasonable, we may find deliberate indifference. For example, if a prisoner went to the infirmary bleeding from a shank in his stomach and the doctor prescribed aspirin and returned the inmate to his cell, we would certainly find deliberate indifference. Where, however, a doctor is presented with symptoms that could indicate heart attack or indigestion and the doctor treats indigestion when the problem is actually a heart attack, we are hard pressed to find deliberate indifference without a showing of subjective awareness, even when the decision to treat indigestion is unreasonable.

The plaintiff offers two cases in support of her contention that Vakilian disregarded an obvious risk, but these cases do not require us to reach a different conclusion. In *LeMarbe v. Wisneski,* 266 F.3d 429, 438 (6th Cir.2001), we held that the plaintiff's claim could survive summary judgment because he adduced sufficient facts for a rational factfinder to conclude that the

prison doctor was aware of an obvious risk and disregarded it. In that case, the doctor, performing exploratory surgery following the removal of the plaintiff's gallbladder, encountered five liters of bile in the plaintiff's abdomen. *Id.* at 432–33. Rather than locate and repair the source of the leak, the doctor instead drained the bile from the plaintiff's abdomen and closed the incision. *Id.* at 433. Naturally, bile again pooled in the plaintiff's abdomen causing serious injuries and requiring additional surgery. *Id.* at 433–34. *LeMarbe* is a different case, because there the doctor had enough facts to know what the problem was (the leak) and what was necessary to ease the patient's discomfort (repair the leak). Here, Vakilian obviously concluded that Cairelli either suffered from indigestion or some type of heart problem. The fact that the symptoms may have suggested that one problem was more likely than the other does not mean that the facts were so obvious that Cairelli actually was having a heart attack that awareness may be imputed to Vakilian.

Plaintiff also cites a Seventh Circuit case, *Sherrod v. Lingle,* as support for her contention that Cairelli's symptoms presented Vakilian with awareness of an obvious risk. In *Sherrod,* the symptoms and diagnostic testing all indicated that the plaintiff suffered from appendicitis. *Sherrod v. Lingle,* 223 F.3d 605, 608–09 (7th Cir.2000). Although his symptoms worsened, he was not treated for fourteen days. Nurses repeatedly noted on his chart to "rule out appendicitis," but the medical staff did not take steps to do so until after the plaintiff's appendix had already ruptured. *Id.* When the doctors finally conducted surgery, the plaintiff not only had a ruptured appendix, but also a gangrenous bowel. *Id.* at 609. A panel of the Seventh Circuit concluded that the medical staff were not entitled to summary judgment because they disregarded a risk of appen-

dicitis *of which they were already aware,* not because it was obvious. *Id.* at 611–12.

Plaintiff urges that *Sherrod* is on point, analogizing Vakilian's order of a cardiac enzymes test with the repetitive notation to "rule out appendicitis" found in *Sherrod.* The latter is distinguishable because the presence of appendicitis was far more obvious in that case than the presence of heart disease was in this case. At least one of the medical staff in *Sherrod* strongly suspected that Sherrod was suffering from appendicitis. *See id.* at 609 (noting that one of the nurses admitted that she knew the plaintiff had appendicitis). Moreover, in this case, Vakilian did take steps to rule out any heart problems by ordering the cardiac enzymes test. It may have been objectively unreasonable in this case not to have had the results expedited, but again, that is not the relevant standard. The fact that Vakilian took steps, however ineffectual, to rule out heart problems also shows that he was not deliberately indifferent.

## CONCLUSION

Because there is insufficient evidence of deliberate indifference, we need not reach the issue of the extent to which there was a substantial risk to Cairelli's health and safety. Despite the tragic outcome of Vakilian's response to Cairelli's symptoms, we agree with the district court that the plaintiff cannot establish an Eighth Amendment violation based on the facts presented. Therefore, the judgment of the district court is AFFIRMED.

COLE, Circuit Judge, dissenting.

Even in the case of prisoners who assert claims of deliberate indifference under the Eighth Amendment, the Supreme Court has never required a smoking gun: the Court has stated that a "factfinder may conclude that a prison official knew of a

substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan,* 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Court so held with good reason. In the same way that employers who discriminate on the basis of race do not write in their files that "I declined to hire this applicant because he is black," prison doctors who perceive yet ignore a substantial risk to the serious medical needs of their patients cannot be expected to note that "I diagnosed my patient as being at serious risk for an immediate heart attack, but decided only to give him an antacid." If Cairelli's symptoms were sufficiently obvious, then, a jury reasonably could find that Dr. Vakilian was aware of Cairelli's heart problems but chose to neglect them. And neither the fact that the doctor did not admit to such disregard, nor the fact that the doctor stated that his diagnosis was "indigestion," would prevent the jury from so doing.

The question, then, is whether Cairelli's symptoms were obviously suggestive of a serious risk of heart attack such that a jury reasonably could infer that the doctor subjectively perceived the risk. Cairelli, a 55–year old male whose father died at age 44 of heart disease, had the following symptoms: (1) he had been experiencing chest pains over the past two or three weeks; (2) he felt these chest pains when he was walking to the mess hall; (3) he weighed 255 pounds; (4) he had a history of high cholesterol; and most significantly (5) two of the three electrocardiogram tests which were administered to him by the nurse revealed that Cairelli was possibly experiencing high lateral infarct— which means that some of his cardiac tissue had died due to a lack of oxygen.

Granted, a jury might conclude that notwithstanding these overwhelming indications of cardiac distress, the doctor genuinely thought that Cairelli had only indigestion. But to say that would be the only reasonable conclusion for a jury to make—solely because of an entry that the doctor made in the file of his patient—is to appropriate from the jury its truth-finding function.

Accordingly, I am of the view that, as in *LeMarbe,* Cairelli's claim survives summary judgment because he adduced sufficient evidence, both inferentially and non-inferentially, for a rational factfinder to conclude that Dr. Vakilian was aware of an obvious risk-the risk of a heart attack-and disregarded it. For that reason, I respectfully dissent.