Antonio PEARSON, Appellant

v.

PRISON HEALTH SERVICE; Somerset County Hospital; Med. Dir. McGrath; Chca at Somerset Visinsky; Chca at Albion Owens; Dept. Supt. Gibson; Supt. Rozum; Capt. Papuga.; Lt. Doyka; Sgt. Rittenour; P.A. Robert Solarzik; P.A. Nancy Ziegler; P.A. Shilobad; P.A. Collins; P.A. McMullen; RN. Jane Doe–1; RN. Jane Doe–2; RN. Jane Doe–3; RN. Jane Doe–4; RN. John Doe–1; RN. John Doe–2; P.A. John Doe–1; P.A. John Doe–2; P.A. Jane Doe–1; P.A. Jane Doe–2; Dr. John Doe–1; Dr. John Doe–2; John Doe–1, C.O.

No. 09–2766.

United States Court of Appeals, Third Circuit.

Submitted for Possible Dismissal Under 28 U.S.C. § 1915(e)(2)(B) and Possible Summary Action

Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6 Oct. 9, 2009.

Opinion filed Oct. 16, 2009.

Antonio Pearson, Somerset, PA, pro se.

Before: FUENTES, JORDAN and HARDIMAN, Circuit Judges.

OPINION

PER CURIAM.

Antonio Pearson appeals *pro se* from the District Court's order dismissing his complaint. For the following reasons, we will vacate and remand for further proceedings. *See* 3d Cir. LAR 27.4 (2008); 3d Cir. I.O.P. 10.6.

I.

Pearson is a Pennsylvania state prisoner. He filed suit *pro se* under 42 U.S.C. § 1983 against various correctional and medical personnel and entities, alleging that they have been deliberately indifferent to his serious medical needs in viola-

tion of the Eighth Amendment. (He also asserts violations of the First and Fourteenth Amendments, but we discern no basis for these claims in his complaint.) We take the following allegations in Pearson's complaint as true for present purposes.

Pearson has been incarcerated at SCI–Somerset since 2005. He has made numerous complaints since then about pain in his abdominal and pelvic areas. On April 10, 2007, he began experiencing "constant sharp pains" in his abdomen. (Compl.¶ 2.) A nurse ("Jane Doe–1 Nurse") saw him at approximately 1:00 p.m. and, without referring the matter to a physician or physician's assistant, told Pearson that she believed he had pulled a muscle and placed him on sick-call for the following day. (Id.) Pearson returned to the medical unit at around 5:00 p.m. and complained that the pain had become "excruciating." (Id. ¶ 3.) Another nurse ("Jane Doe–2 Nurse") saw him and told him that she believed his gall bladder was failing, that there was nothing else she could do for him, and that he should wait for sick call the following day. (Id.)

By approximately 11:00 p.m. that night, Pearson told his block officer that he was "in severe pain in his entire abdominal area" and asked him to call the medical unit. (Id. ¶ 4.) The block officer did so and told Pearson that another nurse ("John Doe–1 Nurse") said that "he was not coming to the unit" because two nurses already had seen him and he was on sick-call for the following day. (Id.) After that, "[t]he pain was so excruciating that [Pearson] screamed until 2:30 a.m. on April 11, 2007," when a correctional officer called the medical unit again and the same nurse finally came to the unit to see him. (Id.) According to Pearson, the nurse was "mad" at him and "forced [him] to crawl to the wheel chair" from his bed. (Id. ¶ 5.) The nurse "stated that if [Pearson] could not make it to the wheel chair, then he will not be taken to the hospital." (Id.) Pearson made it to the wheel chair, and the nurse took him to the infirmary and "placed him in an infirmary cell all night in excruciating pain." (Id.) Finally, and apparently the next morning, two physicians authorized Pearson to be taken to an outside hospital. (Id.) A physician at the hospital performed emergency surgery to remove Pearson's appendix, which had failed because a "tumor/mass" in plaintiff's stomach had attached itself to it. (Id.)

After Pearson returned to prison, he felt a sharp pain and felt liquid running down his leg, which he later identified as blood flowing from his penis. (Id. ¶ 6.) At his request, his block officer called the medical unit, but "they" refused to allow him to come to the unit and told the officer to have Pearson lie on his back. (Id.) Pearson "continued to be in constant pain and blood continued to run down [his] leg," so the block sergeant called the medical unit again and they authorized a visit. (Id.) A physician's assistant ("John Doe P.A."), alarmed by the amount and brightness of the blood (which indicated that it might be arterial), told Pearson that he might be going to an outside hospital and called defendant Robert McGrath, a Medical Director, at home. (Id.) The assistant then told Pearson that Dr. McGrath was "mad" at him for calling at home and told him to "just place [Pearson] in a room overnight." (Id.) Dr. McGrath saw Pearson the next day and, without seeing the amount of the blood, told him his condition was "normal" and sent him back to his cell. (Id.)

Once back in his cell, however, Pearson "continued to have blood gush out of his penis, had to use a bag to keep it from messing up his clothes and bedding and was in constant pain[.]" (Id.) Pearson complained to a Sergeant Rittenour, who relayed his complaint to Captain Thomas

Papuga, who "told him to give [Pearson] a direct order to get rid of the blood," which "was done to hide [Pearson's] serious medical need." (*Id.*) But "[b]lood started to run down [Pearson's] leg again," and Pearson returned to the medical unit. Finally, he was taken back to the outside hospital for additional surgery, and later learned that he had suffered a cut on the inside of his penis during the removal of his appendix. (*Id.* ¶ 7) Pearson seeks, in relevant part, monetary damages and a declaration that defendants violated his constitutional rights.

Pearson submitted his complaint along with an application for leave to proceed *in forma pauperis* ("IFP"). On April 22, 2009, a Magistrate Judge issued a Report and Recommendation recommending that the District Court dismiss the complaint for failure to state a federal claim. The Report and Recommendation also granted Pearson's IFP motion, but "only so that the Clerk may file the complaint." (R & R at 1.) It further conditioned Pearson's right to file objections on his return of an authorization to collect payments toward the filing fee from his prison account. Pearson returned the authorization and filed objections. In both his objections and the complaint itself, Pearson alleged

that he has been unable to obtain a copy of his medical records and requested leave to amend his complaint. By order entered May 21, 2009, the District Court adopted the Report and Recommendation and dismissed Pearson's complaint. It did not address his requests for leave to amend. Pearson appeals.[1]

## II.

In order to state an Eighth Amendment claim for deliberate indifference to medical needs, a plaintiff must plead "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Fac.*, 318 F.3d 575, 582 (3d Cir.2003). The District Court did not determine whether Pearson alleged a serious medical need, but we think it beyond question that he has. *See Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir.2003) (medical need is serious "if it has been diagnosed by a physician as requiring treatment"); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir.2000) ("[A]n appendix on the verge of rupturing easily meets this standard."). Instead, the District Court dismissed Pearson's complaint on the sole basis that he did not "allege any facts that support

---

1. The District Court dismissed the complaint "without prejudice" to Pearson's right to file suit in state court, but its order clearly contemplates no further proceedings in federal court. Accordingly, we have jurisdiction under 28 U.S.C. § 1291. The District Court did not specify the statute or rule under which it dismissed Pearson's complaint. The District Court concluded that Pearson's complaint fails to state a federal claim, so it could have dismissed it under 28 U.S.C. § 1915(e)(2)(B)(ii) or Rule 12(b)(6). Our review is plenary in either case, *see Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir.2000), but we construe the dismissal as one under § 1915(e)(2)(B)(ii). *See Oatess v. Sobolevitch*, 914 F.2d 428, 431 (3d Cir.1990) (holding that district courts may not dismiss a complaint under Rule 12(b)(6) *sua sponte* before service

of process). The procedure that the District Court employed was somewhat unorthodox and potentially problematic but, under the circumstances, we need do no more than review its ultimate ruling. In doing so, we " 'accept all allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.' " *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir.2008). Although the " 'factual allegations must be enough to raise a right to relief above the speculative level,' " *id.* at 234 (citation omitted), complaints filed *pro se* must be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

an inference of deliberate indifference as that term is defined by the Supreme Court." (R & R at 4.) We disagree.

Deliberate indifference requires a showing that "the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must also "draw the inference." *Id.* We have explained that this standard is "clearly met" in a number of scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and where the denial of "reasonable requests for medical treatment ... exposes the inmate to undue suffering[.]" *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir.2004) (citations and internal quotation marks omitted). We also have found this standard satisfied when "a prison official ... knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a non-medical reason." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999).

In this case, the District Court believed that Pearson alleges "at most" that medical personnel were "discourteous and uncaring." (R & R at 2.) Pearson, however, has alleged facts raising an inference that defendants were deliberately indifferent to his suffering and delayed medical care for non-medical reasons. He alleges, for example, that he complained of constant and excruciating pain to two nurses but that they provided no examination or treatment and merely put him on the sick-call list for the following day. Then, after he continued to suffer excruciating pain, he was denied a third request to go to the medical unit because he already had been seen and was on the next day's sick call list. Finally, after Pearson screamed in pain for over three hours in his cell, a nurse—who Pearson describes as "mad" at him—finally visited him, but "forced him to crawl" to a wheelchair, told him he would not be taken to a hospital if he could not make it, then had him taken without further treatment to a holding cell where he was left in excruciating pain for the rest of the night. These allegations state a claim for deliberate indifference.

Pearson also alleges that, after he began bleeding from his penis following the removal of his appendix, Dr. McGrath was "mad" at his concerned assistant for having called him at home about Pearson's condition and told him to "just place [Pearson] in a room overnight." He further alleges that, after Dr. McGrath told him his condition was "normal" and sent him back to his cell, correctional personnel ordered him to dispose of the blood he continued "gushing" in order to "hide" his condition. These allegations state a claim for deliberate indifference as well.[2]

Accordingly, we will vacate the District Court's judgment and remand for further proceedings. We neither express any opinion on the merits of Pearson's claims nor rule out the possibility that some or all defendants may be able to raise grounds for dismissal under Rule 12(b)(6) or otherwise. Instead, we hold only that the alle-

---

2. Pearson raises allegations in addition to those discussed herein. He alleges, for example, that the physician who removed his appendix never called him back for a promised check up to determine whether the "tumor/mass" had damaged his liver, and that Dr. McGrath refused to authorize a check-up to determine whether the "tumor/mass" has grown back. Pearson's existing allegations in this regard do not state a claim for deliberate indifference, but we cannot say that amendment of his complaint would prove futile. Thus, as with the other allegations discussed herein, the District Court should not have dismissed them without leave to amend. *See Phillips*, 515 F.3d at 236.

gations discussed above state the elements of a deliberate indifference claim and that the District Court erred in concluding otherwise. On remand, the District Court should allow Pearson to amend his complaint before dismissing it on the basis of any future Rule 12(b)(6) motion unless amendment would be inequitable or futile. *See Phillips,* 515 F.3d at 236.