John P. MIKSIS, Plaintiff–Appellee,

v.

Henry L. HOWARD and Schneider
National Carriers, Inc., Defen-
dants–Appellants.

No. 96–1896.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1996.

Decided Feb. 5, 1997.

As Amended Feb. 10, 1997.

Terrance M. Rubino, Wanda E. Jones (argued), Rubino & Jones, Munster, IN, Samuel L. Cappas, Highland, IN, for plaintiff–appellee.

James T. Ferrini (argued), Clausen Miller, P.C., Robert J. Golden, Dowd & Dowd, Chicago, IL, for defendant–appellant.

Before ESCHBACH, FLAUM, and KANNE, Circuit Judges.

ESCHBACH, Circuit Judge.

On June 29, 1992, John Paul Miksis was changing a lightbulb in a traffic light as part of his summer job with Midwestern Electric. In order to reach the light, Miksis was suspended in the bucket of an aerial-lift truck. As he worked, a truck passing through the intersection knocked the bucket, hurling Miksis to the ground. Miksis sustained severe injuries, including brain damage and the loss of control of both legs. Miksis sued the driver of the truck, Henry Howard, and his employer, Schneider National Carriers, Inc. A jury awarded Miksis $10 million in damages. Because the jury found defendants to be 80 percent at fault, the court entered judgment against defendants in the amount of $8 million. Defendants now appeal, claiming the district court made a number of erroneous rulings during discovery and trial, and claiming that the verdict is excessive. The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1); we have juris-

diction under 28 U.S.C. § 1291. We now affirm.

## I. Background

At the time of the accident, John Paul Miksis was a 21 year old college football player at Olivet Nazarene University. Immediately after the accident he could not eat or breathe without aid, he was unable to speak or walk, and he was incontinent. Miksis underwent extensive therapy under the supervision of his treating physician Dr. Valerie Ito, the Acting Director of the Brain Trauma Unit at the Rehabilitation Institute of Chicago. During therapy he had to relearn these basic functions and he regained some mobility in his legs and arms. By January 1993, Miksis had improved enough to return home. However, he continued extensive outpatient therapy. Eventually Miksis learned to walk with the aid of a cane and leg braces, but balance is difficult because he has only limited movement in his legs and left arm. Miksis' motor skills, for example, his ability to manipulate objects with his hands, have suffered significantly as a result of the accident.

In addition to his physical limitations, Miksis' brain injury also affected his mental processing. As a result of his injuries, Miksis suffers attentional difficulties making it hard for him to stay focused. Miksis' problem solving skills are impaired and he is less able to adapt to changes in his environment. Additionally, the accident caused deficits in auditory comprehension, memory, and his ability to process information.

Miksis has improved greatly since his near paralysis at the time of the accident. However, he has not, and the doctors predict he never will, return to his former level of physical or cognitive functioning. Dr. Ito has indicated that Miksis will never be able to live completely on his own. He requires supervision and structured activities. To this end, she has recommended Miksis live in a group home or other assisted living situation away from his family. There also is evidence that Miksis is not employable because of the combined effect of his physical and cognitive impairments. Miksis' rehabilitation expert, Robert Voogt, prepared a "life care plan," on which Miksis based his future cost estimates. The plan included several options, including group living situations and the possibility of independent living as recommended by Dr. Ito, as well as the costs of future therapy and the physical aids Miksis will need. The total costs of these plans ranged from $3.4–$4.4 million. In addition, Miksis sought compensation for his pain and suffering and over $800,000 in past medical expenses. The jury awarded $10 million in damages, apportioning $8 million to be paid by defendants.

Defendants now appeal and request a new trial, or, in the alternative, remittitur. A new trial may be granted if the verdict is against the clear weight of the evidence, the damages are excessive or the trial was unfair to the moving party. *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1196 (7th Cir.1992); *Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 636 (7th Cir.1996). The district judge denied defendants' motion for a new trial, which raised a number of the same issues defendants raise here.[1] "[B]ecause the authority to grant a new trial … is confided almost entirely to the exercise of discretion on the part of the trial court, … the grant or denial of a motion for a new trial is not subject to review by this court, except upon exceptional circumstances showing a clear abuse of discretion." *Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989) (quoting *General Foam Fabricators v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 288 (7th Cir.1982)). *See also Allison*, 979 F.2d at 1196; *Emmel*, 95 F.3d at 636. We defer to the district court because of its unique position to view the evidence and the course of the trial. *Allison*, 979 F.2d at 1196.

## II. Discovery

### A.

As Miksis underwent the trauma of rehabilitation, the lawyers pursuing the case underwent their own trauma: discovery. The

---

1. Specifically, defendants reassert the discovery issues, attorney misconduct, and excessiveness of the verdict. The court also denied defendants' motion for judgment as a matter of law, but defendants do not appeal this ruling.

district court, in a pair of September 14, 1994 orders, established a strict discovery schedule:

March 31, 1995: Discovery to be completed.

July 24, 1995: Plaintiff to make requisite expert disclosures.

August 11, 1995: Defendants to complete depositions of plaintiff's experts.

September 1, 1995: Defendants to make requisite expert disclosures.

September 21, 1995: Plaintiff to complete depositions of defendants' experts.

November 6, 1995: Jury trial to begin.

The court's order specifically warned: "Failure to comply with the court's orders ... may result in this court's striking of an expert and/or expert's testimony." Much to defendants' chagrin, the court made good on this threat.

Defendants sought, and received, two extensions of the discovery deadline. On March 31, 1995, the date of the original deadline, defendants moved for an extension until June 30, 1995 in order to take Dr. Ito's deposition. On July 28, 1995, they requested and were granted limited additional discovery regarding Miksis' driver retraining. Not until August 11, 1995 did defendants move to take a medical examination of Miksis pursuant to Federal Rule of Civil Procedure 35. On August 24, 1995, defendants moved to extend the deadline for disclosure of their list of experts and their proposed opinions until October 1, 1995, on the ground that such opinions would not be complete without the medical examination.

Not innocent of undue delay itself, the district court did not rule on either the motion for a medical examination or the motion to extend time until the magistrate judge issued an order denying both on October 30, 1995. On November 3, 1995, 60 days after the original deadline and 30 days past the requested extension, defendants finally made the requisite disclosure of their experts and their proposed opinions. As defendants soon discovered, disclosure three days before trial was too late. The district court granted plaintiff's motion to strike defendants' experts as untimely. Defendants now appeal

the denial of both motions and the exclusion of their experts as a sanction for their lack of timeliness.

### B.

■ We review a district court's discovery determinations for abuse of discretion. *Gile v. United Airlines*, 95 F.3d 492, 495 (7th Cir.1996); *Sadowski v. Bombardier Ltd.*, 539 F.2d 615, 620 (7th Cir.1976). We will not find that the court abused its discretion "unless one or more of the following circumstances is present: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Gile*, 95 F.3d at 495. Moreover, there must be a "clear showing" that a discovery limitation "resulted in actual and substantial prejudice" for it to warrant reversal. *Id.*

1. Denial of Medical Examinations of Plaintiff.

■ Defendants argue that the denial of a medical examination is in error because they were diligent—they did not have reason to request a medical examination until they were "sandbagged" on July 24, 1995 when they received notice of plaintiff's proposed expert testimony regarding the need for a multi-million dollar life plan.

Defendants' claims that they were sandbagged are belied by the facts. The discovery cut off was March 31, 1995. Defendants knew from day one that plaintiff's medical condition was an issue, yet they failed to request the medical examination until August 11, 1995. The need for a "life plan"—in other words, a prediction of high medical costs for the remainder of plaintiff's life— was clearly foreseeable from the nature of plaintiff's injuries. Plaintiff suffered brain damage causing permanent physical and cognitive impairments. Defendants deposed plaintiff's personal physician a month before this request, and should have discovered then the opinion she expressed at trial (via a November videotaped deposition) that plaintiff will never be able to live wholly on his

own. Defendants' protestations of diligence ring hollow.

To the extent defendants were taken by surprise by the "life plan," they have only themselves to blame. According to defendants, they made a conscious decision not to move for a medical examination because they did not think they needed one. However, defendants knew all along that according to the schedule set by the court they would not receive plaintiff's experts' proposed opinions until after the close of discovery. When they decided not to move for a medical examination prior to the discovery deadline—which they knew was prior to any required expert disclosures—they also made the decision to remain in ignorance.

■ Defendants further argue that even if they already had a medical examination, they would need another to stay apprised of plaintiff's medical improvements. They argue that because they would have been entitled to a second examination, they should have been allowed a first, belated, examination. However, defendants failed to argue alleged improvements when they originally moved the district court for a medical examination. Thus, this argument is waived. *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir.1996); *see also United States v. Rode Corporation*, 996 F.2d 174, 179 (7th Cir.1993) ("We consistently hold that arguments not made in the district court are waived.") (quoting *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse–Wisconsin, Inc.*, 991 F.2d 1249, 1258 (7th Cir.1993)).

■ Even had this argument been presented to the district court, the court still would be well within its discretion to refuse the medical examination. This argument is nothing more than an attempt to bootstrap out of defendants' failure to take a first examination. Second examinations are allowed for good cause, *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), which exists if there has been a change in condition that would leave a party with outdated information. *Vopelak v. Williams*, 42 F.R.D. 387 (N.D.Ohio 1967); *see also Peters v. Nelson*, 153 F.R.D. 635, 638 (N.D.Iowa 1994); *Moore v. Calavar Corp.*, 142 F.R.D. 134 (W.D.La.1992). However, when there has been no first examination, defendants are not left with outdated information. This is not a case where defendants are left unarmed to rebut a claim that plaintiff's condition deteriorated. Rather, defendants claim that Miksis' condition improved. Nor is this a case where defendants' own evidence will work against them because it reflects plaintiff's condition prior to improvement. Defendants have no such evidence because they apparently never believed Miksis' condition to be so severe. That is the very reason they assert they did not take the medical examination during the proper discovery period. Defendants' argument that they are entitled to a medical examination because, if they had taken a first, they would now be entitled to a second, is nothing more than an attempt to do an end run around their own lack of diligence. This attempt fails.[2]

Defendants were far from diligent. The district court acted well within its discretion when it denied defendants' untimely motion for a medical examination. *See Grassi v. Information Resources, Inc.*, 63 F.3d 596, 604 (7th Cir.1995) (affirming denial of untimely motion to compel discovery); *Northern Indiana Pub. Serv. Co. v. Colorado Westmoreland, Inc.*, 112 F.R.D. 423 (N.D.Ind. 1986) (denying motion to compel answers to untimely interrogatories); *Kirkpatrick v. Elgin, Joliet & Eastern Railroad Co.*, No. 94–CV–270 (N.D.Ind. July 12, 1995) (unpublished order) (denying untimely motion for a medical examination).

2. **Motion to Extend Time and Exclusion of Experts.**

On August 24, 1995, defendants moved to extend the time by which they had to disclose

---

2. Even if defendants had taken a first examination, it is not clear defendants would be entitled to a second one. Defendants' argument that plaintiff improved is based solely on the fact that plaintiff passed an evaluation enabling him to drive a car. There has been no allegation of other signs of change in plaintiff's overall condition. *See Brandstetter v. Nat'l Railroad Passenger Corp.*, No. 86–2893, 1987 WL 25422 at *2 (D.D.C. Nov.19, 1987) (unpublished opinion) (denying additional M.E. because allegation of change in condition based only on fact that recent medical report indicated plaintiff was now able to work).

their experts and their proposed opinions from September 1 to October 1. Defendants argued the extension was necessary to allow time to take a medical examination, because they were not able to examine all of plaintiff's experts by the August 11, 1995 deadline, and because plaintiff had not yet produced certain documents. On October 30, 1995, the district court denied the motion as moot because it denied the request for the medical examination and the date of the requested extension had passed. Defendants argue the only reason the motion was moot was because of the district court's own delay in ruling on it.

■ The magistrate judge should have been more prompt in ruling on the motion to extend time. However, there must be a "clear showing" that the denial of the requested extension "resulted in actual and substantial prejudice" for it to warrant reversal. *Gile*, 95 F.3d at 495. Defendants claim prejudice from the court's order to strike their experts, issued because the disclosures for which they requested the extension were untimely. Because we find that sanction justified, as discussed below, we see no abuse of discretion in the denial of defendants' motion to extend time.

■ Defendants claim the district court abused its discretion and unfairly prejudiced their case when it excluded their experts as a sanction for their failure to make timely disclosures. Rule 26(a)(2) of the Federal Rules of Civil Procedure requires parties to disclose the identity of any experts they may use at trial and a summary of those experts' opinions. The district court granted plaintiff's motion to strike defendants' experts because defendants did not timely make this disclosure. Defendants failed to disclose this information until three days before trial, 60 days after the deadline, and 30 days after their requested extended deadline. Federal Rule of Civil Procedure 37(c) states that a party who fails to disclose information (including expert lists) in accordance with Rule 26(a) "shall not, unless such failure is harmless, be permitted to use as evidence at a trial ... any witness ... not so disclosed." This sanction is "automatic and mandatory" unless the party can show the violation was "either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996). We will reverse only if the district court abused its broad discretion in determining whether a violation is justified or harmless. *Id.* at 1231; *see also Patel v. Gayes*, 984 F.2d 214, 217 (7th Cir.1993).

Delay until three days before trial is not harmless, *see Finley*, 75 F.3d at 1230, and defendants do not argue that it is. Rather, defendants argue they were justified in their delay because they were waiting for the court to rule on their motion to extend time and their request to take a medical examination. However, defendants did not file any additional request for an extension of time when October 1—the date of their requested extension—arrived. Nor did they offer any reason why they could not have disclosed a provisional list of experts and proposed opinions subject to revision if the court granted their motion for the medical examination. The court issued no ruling modifying its September discovery schedule. Thus, that schedule remained in force and defendants disregarded it at their own risk. Defendants' delay was *not* "tardy only because of the court's own delay in ruling." Rather, defendants made a tactical decision to wait and see how the court ruled on their motion. The proper course was to obey the court's order, timely disclose the list of experts and their proposed opinions, and update that disclosure if a medical examination was granted or if otherwise necessary. *See* Fed.R.Civ. Pro. 26(a)(2)(C), 26(e) (requiring supplementation of expert disclosures). "Unwise tactical decisions such as this are not the type of occurrence for which we reverse trial courts on appeal." *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1223 (7th Cir.1990) (affirming denial of additional time for discovery when movant failed to conduct discovery during pendency of his motion to dismiss).

Moreover, defendants still did not make the required disclosures by the date of their requested extension, October 1, 1995. Thus, even if the court granted their motion to extend time, defendants were still a month late in disclosing their list of experts. Given this delay, the district court was still well

within its discretion to strike defendants' experts. *See Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1295–96 (7th Cir.1993) (affirming order barring expert from testifying as sanction for noncompliance with discovery deadline as within district court's discretion).

## III. Trial Error

### A. Admission of Exhibit 57.

■ Defendants challenge the admission of exhibits 57C through 57H, charts prepared by plaintiff's expert, Robert Voogt, a Ph.D. in rehabilitation counseling, illustrating plaintiff's alleged future medical needs and the costs of meeting those needs. Defendants claim this exhibit is unsupported by medical testimony, because Voogt, although a Ph.D., is not a medical doctor, nor did he consult one. According to defendants, the testimony of plaintiff's neuropsychologist, Dr. Pueschel, is inadequate to support the exhibit because she is also not qualified to opine as to medical care. Additionally, defendants argue that Dr. Ito's testimony does not in fact support the exhibits.

■ Unfortunately for defendants, they did not preserve this issue for review.[3] In order to preserve an issue for appellate review, a party must spell out his specific ground for objection at the time it is made. Fed.R.Evid. 103(a)(1) (stating an objection must state "the specific ground of objection, if the specific ground is not apparent from the context"); *see also Knox v. State of Indiana*, 93 F.3d 1327, 1333 (7th Cir.1996); *United States v. Wilson*, 966 F.2d 243, 245–46 (7th Cir.1992); *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1405 (7th Cir.1991). Defendants call requiring a specific objection "nit-picking." They seem to assume that this justifies disobeying federal rules of procedure. It does not. Moreover, the rule exists for good reason. Specificity in objections is necessary in order to alert the trial judge to the nature of the alleged error, allowing him to make an appropriate ruling and allowing opposing counsel to correct asserted error. *Wilson*, 966 F.2d at 246.

At trial, defendants failed to make any objection to the exhibits grounded on a lack of medical foundation. They did object on several other grounds, for instance, hearsay. Although defendants objected on foundational grounds, it was not for lack of medical foundation, but for lack of the proper foundation for a summary. Two objections are worth mentioning, because they are the only ones that arguably would preserve the issue. The first came when Voogt was asked to testify as to what care Miksis may need *outside of* that included in exhibit 57F, if Miksis were placed in a group facility. At this point defense counsel stated: "To which I object, Your Honor. This witness is not a medical doctor, may not render diagnoses and he may not prognosticate as to future medical care needs; beyond his expertise." An exhibit summarizing costs related to this care was apparently introduced shortly after this testimony. However, defendants never made this objection with respect to the admission of any of the allegedly improper exhibits.

Defendants also objected to exhibit 57H, an itemization of the cost of acquiring and maintaining a van modified for plaintiff's disabilities. Defense counsel stated: "Object on the grounds of foundation, hearsay. Also your Honor, speculative. These items are merely possible. There is no indication with respect to what certainty if any from a medical standpoint these items would be needed." Although this objection has a "medical standpoint," the ground for the objection is that the exhibit is speculative. That is not the objection asserted on appeal: a lack of medical foundation because Voogt, who created the charts, was not a medical doctor.

### B. Sleep Deprivation Expert.

■ Plaintiff's sleep deprivation expert, Dr. Dement, testified that the driver was fatigued and that sleep deprivation was the primary cause of the accident. Defen-

---

**3.** Defendants also violated Circuit Rule 30 by neglecting to append the appropriate trial transcript excerpts, risking summary affirmance of this issue. *See Hill v. Porter Memorial Hosp.*, 90 F.3d 220, 225–26 (7th Cir.1996). We thank plaintiff, and his counsel, for rectifying this deficiency.

dants argue the admission of Dement's expert testimony was error. The district court has "broad discretion" with regard to whether to admit expert testimony, and its decision "will be affirmed unless 'manifestly erroneous.'" *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990) (citation omitted). We find no abuse of discretion here.

Defendants first argue that because Dement is not an expert in accident reconstruction, this causation testimony was outside his area of expertise and should not have been admitted. Defendants are correct that Dement is not an expert in accident reconstruction, but he did not attempt to reconstruct the accident through his testimony. Thus, the objection that Dement testified outside his area of expertise is without merit.

Defendants also argue that a jury does not need an expert to understand the role of fatigue. However, the focus of Dement's testimony was not just the role of fatigue, but the existence of fatigue. Expert testimony is admissible if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. The district court has broad discretion to determine if testimony would be helpful to the jury; we will not second guess its decision to admit expert testimony on fatigue in this case. *See Carroll*, 896 F.2d at 212.

Finally, defendants argue that Dement improperly testified to the ultimate legal conclusion, that sleep deprivation was the "primary cause" of the accident. However, under Fed.R.Evid. 704(a), experts are allowed to testify as to the ultimate issue in a case. *Moore v. Wesbar Corp.*, 701 F.2d 1247, 1253 (7th Cir.1983). Defendants cite *Owen v. Kerr–McGee Corp.*, 698 F.2d 236 (5th Cir.1983), for the proposition that testimony as to causation is impermissible as a legal conclusion. However, the *Owen* court did not hold that any testimony as to causation embraces a legal conclusion. Rather, it distinguished between factual and legal causation. In *Owen*, plaintiff ran his bulldozer into defendant's pipe, which exploded. De-

fendant asserted plaintiff was contributorily negligent for not investigating the location of the pipe. The court did not allow defendant's expert to testify as to the "cause" of the accident, holding that the inadmissible question must have been asking about legal causation because there was no dispute as to the factual cause of the accident. *Id.* at 240. In the instant case, however, there was a factual dispute as to whether the driver was fatigued, and whether that fatigue could have caused the driver to hit Miksis' construction bucket. Given these facts, we cannot say the district court's decision to admit this testimony was so "manifestly erroneous" as to constitute an abuse of discretion. *See Carroll*, 896 F.2d at 212.

## C. Jury Instructions Regarding Drug Test Results.

 Defendants next appeal jury instructions.[4] The contested instructions stem from the driver's testimony at a deposition, later recanted, that after the accident he took a drug test. Plaintiff desired the jury to infer that, because defendants did not produce the results of this drug test, the results were adverse to the defense. The instruction, a "missing-evidence" instruction, reads as follows:

The plaintiff contends that, at one time, Schneider National Carriers, Inc. possessed the results of a drug test that had been administered to Henry L. Howard within a few days after the collision in this case. The defendants, however, contend that no such drug test was ever administered to Henry L. Howard in the days immediately following the collision.

The unexplained failure of a party to produce evidence within its control may give rise to an inference that, had the evidence been produced, the evidence would have been unfavorable to that party's cause.

However, you may not infer that such evidence would have been unfavorable unless you find by a preponderance of the evidence that:

**4.** Defendants again violated Circuit Rule 30 by failing to append any trial transcript excerpts which include either their objections to the instructions or the court's response to those objections.

(1) the party willfully destroyed the evidence; and

(2) the evidence was destroyed in bad faith.[5]

Defendants do not argue this instruction misstates the law, but that it is unsupported by the evidence and is thus improper. Defendants denied the existence of any drug tests and claim there was no evidence of drug use. They argue that plaintiff's complaint never alleged the driver was under the influence, thus, even if such drug tests existed, there was no reason for defendant to introduce them into evidence. In other words, according to defendants, because "there was nothing to rebut," the missing-evidence instruction was improper.

 Federal law governs the question of whether to grant or deny a missing-evidence instruction. *Niehus v. Liberio*, 973 F.2d 526, 530 (7th Cir.1992) (addressing propriety of missing-evidence instruction); *see also Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155–56 (4th Cir.1995) (applying federal law in case based on diversity and maritime jurisdiction); *Gilbert v. Cosco Inc.*, 989 F.2d 399, 405 (10th Cir.1993) (holding that decision whether to grant or deny instruction is governed by federal law). In reviewing missing-evidence instructions based on Illinois state law, we have suggested that "it should be enough that there is evidence that a party would surely have introduced had it been helpful, permitting an inference that the evidence would instead have helped his opponent." *Niehus*, 973 F.2d at 531; *see also Doe v. Johnson*, 52 F.3d 1448, 1460–61 (7th Cir.1995); *Berry v. Deloney*, 28 F.3d 604, 609 (7th Cir.1994). Here, the driver testified that the day after the accident he took a drug test. He later recanted this testimony, but the jury was free to credit the first version: that the driver took the test. Defendants presented testimony to support their claim that the driver did not take a drug test; and to support their alternative argument that even had he taken the test,

they would not still have a record of it in the ordinary course. Given that defendants introduced evidence to rebut the adverse inference, we find incredible defendants' argument that because there was "nothing to rebut" they would not have produced the test results had they been available.

 Defendants correctly point out that in *Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir.1983), we stated that "[t]his circuit requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence to support the [missing-evidence] instruction." The *Spesco* court held the instruction properly refused because the proffering party did not allege any intentional destruction or concealment of evidence, and thus the instruction would have been unduly argumentative. *Id.* However, in contrast to the instruction at issue in *Spesco*, the instruction in the instant case required the jury to find that defendants willfully and in bad faith destroyed the evidence before it could make an adverse inference. We presume jurors follow the court's instructions. *Doe*, 52 F.3d at 1459. Thus, in conformity with *Spesco*, the district court required that plaintiff prove defendants intentionally destroyed the test results before the jury could draw an adverse inference. The instant instruction also differs from that in *Spesco* because it includes the reminder that defendants disputed the existence of any drug test. Thus, unlike the instruction in *Spesco*, it was not unduly argumentative. See *Spesco*, 719 F.2d at 239. We will only reverse based on an improper jury instruction if "the jury's comprehension of the case was influenced so heavily ... that the litigant is prejudiced." *Knox v. State of Indiana*, 93 F.3d 1327, 1337 (7th Cir.1996) (refusing to grant new trial despite mid-trial jury instruction that did not correctly state the law). Because the jury was properly instructed that it could not draw an adverse inference unless it found willful destruction of evidence, we do not find the prejudice necessary to warrant granting a new trial.

---

**5.** The court also instructed that if the jury found that a party violated a statute, including a statute prohibiting the use of controlled substances, that violation would constitute fault. Defendants' appeal regarding this instruction is waived because

they failed to develop the argument in their brief. *See United States v. Berkowitz*, 927 F.2d 1376, (7th Cir.1991) ("We have repeatedly made clear that perfunctory and undeveloped arguments ... are waived....").

## D. Attorney Misconduct.

Defendants next argue that we should grant a new trial based on plaintiff's attorney's improper comments during closing arguments. When discussing damages, the plaintiff's attorney recited a list of celebrities' salaries and speculated as to the salaries of the defense attorneys. "[T]his court has repeatedly explained that improper comments during closing argument rarely rise to the level of reversible error." *Doe,* 52 F.3d at 1465 (quotation marks and citation omitted); *see also Sheldon v. Munford, Inc.,* 950 F.2d 403, 410 (7th Cir.1991). Defendants have not shown that this is one of those rare cases that justify reversal. The district court recognized the attorney's comments as misconduct, but held that they were not so prejudicial as to require a new trial. In so holding, it noted that the defense counsel later argued that plaintiff's requested damages were "designed to compensate [his] three lawyers." Moreover, the only objection made by defendants—to a comment which began: "What do you think Schneider is spending to have four lawyers sit here"—was sustained. Because defendants did not object to any other comments, they did not preserve them for appellate review. *Sheldon,* 950 F.2d at 411; *Gonzalez v. Volvo of America Corp.,* 752 F.2d 295, 298 (7th Cir.1985). The district court's refusal to grant a new trial based on plaintiff's attorney's closing argument was not an abuse of discretion.

## IV. Damages: Excessive?

Defendants argue that the total award of $10 million is excessive. We use federal standards to determine excessiveness of verdicts in diversity cases. *Mayer v. Gary Partners and Co., Ltd.,* 29 F.3d 330, 334 (7th Cir.1994). We will vacate a damages award only if it is "monstrously excessive," considering whether it is out of line with verdicts in similar cases, or if it bears no rational connection to the evidence. *Littlefield v. McGuffey,* 954 F.2d 1337, 1348 (7th Cir.1992). The district court has already denied defendants' motion for a new trial on damages or remittitur, and we review this decision only for abuse of discretion. *EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1285 (7th Cir.1995).

First, defendants argue that the verdict in this case is out of line with verdicts in similar cases. They cite a number of cases in which lesser damages were granted. But these cases prove nothing except that some plaintiffs have received less money than Miksis; they do not show the current award to be "monstrously excessive." The district court, on the other hand, cited seven cases which illustrate that this verdict *is* in line with verdicts in similar cases. Defendants make no argument that these cases are inapposite. Thus, defendants have given us no reason to think the district court abused its discretion on this issue.

Defendants also argue the evidence did not support a finding that the accident caused plaintiff's current mentation deficits because there was no expert testimony as to causation. The district court rejected this argument in the context of defendants' motion for judgment. It held that plaintiff did present adequate expert testimony to allow a rational jury to conclude the accident caused plaintiff's cognitive impairments. In a nutshell, plaintiff's treating physician testified that the accident caused brain injury and both she and plaintiff's neuropsychologist testified that his cognitive abilities declined significantly after the accident in ways consistent with such an injury. Given that all evidence must be viewed in the light most favorable to the winning party, *Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 960 (7th Cir.1996), we agree with the district court that the evidence is sufficient to support a finding of causation.

Defendants also argue that the damages bear no rational connection to the evidence. Their real argument, however, is a repeat of their attack on exhibit 57. They claim that because this exhibit is "bogus," any damages based on it are unsupported by the evidence. However, we have already determined that the exhibit was properly admitted given the objections raised at trial. *See* discussion *supra.* Because properly admitted, we must consider this exhibit as evidence. Additionally, defendants completely

ignore the question of what portion of the damages should be attributed to pain and suffering, as opposed to the challenged amounts for economic loss. The jury may well have discounted the amount awarded for future costs based on defendants' criticisms at trial. It is impossible to tell from the verdict form used. Thus, the evidence, including Exhibit 57, viewed in the light most favorable to the winning party, supports the jury's damages verdict.

## V. Conclusion

For the reasons stated above, the judgment below is

AFFIRMED.