In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2224

MICHAEL A. WILLIS, et al.,

*Plaintiffs-Appellants*,

*v.*

WILLIAM J. LEPINE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CV 4208—**Joan Humphrey Lefkow**, *Judge*.

ARGUED APRIL 12, 2012—DECIDED JULY 23, 2012

Before EASTERBROOK, *Chief Judge*, and MANION and
SYKES, *Circuit Judges*.

MANION, *Circuit Judge*. Plaintiffs Michael Willis and
Kendrick Owens, 14 and 16 years old, respectively, were
arrested outside of Willis's home for allegedly dealing
drugs. After being transported to the police station, Willis
and Owens claim that they were subjected to a strip
search before being confined for several hours. Willis
and Owens were released to their families after being

charged with conspiracy to deliver a controlled sub-
stance and were ordered to appear at juvenile court a
few weeks later. The charges, however, were eventually
dropped. Willis and Owens then filed this suit in
federal court against the two arresting officers, alleging
false arrest and an illegal search under 42 U.S.C. § 1983,
and malicious prosecution under Illinois state law. The
case went to trial, and a jury returned a verdict for
the defendant officers on all claims. The district court
denied the plaintiffs' post-trial motions for relief from
judgment and for a new trial. Willis and Owens
appealed, asserting that the district court wrongly
denied their post-trial motions and that defense
counsel's alleged violation of a motion-in-limine ruling
constitutes reversible error. We affirm.

### I.

Michael Willis and Kendrick Owens, two teenaged
black males, were arrested in the evening hours of Febru-
ary 26, 2006, outside of Willis's home located at 5531
West Congress Parkway in Chicago. Owens was a friend
of Willis's who lived on the same block. The arresting
officers were William Lepine and Derek Glowacki; they
are the defendants in this case. At trial, the two sides
gave accounts that were, at many points, directly contra-
dictory. We begin with the plaintiffs' account.

### A.  Plaintiffs' Account

Willis was 14 years old when the incident occurred. He
lived in his grandmother's home with several members

of his immediate and extended family. On the day of this incident, Willis left his house a few minutes before 7:00 p.m. to retrieve a CD from his sister, who was waiting for him in a car outside on the street. At the same time that Willis was obtaining the CD, his distant cousin, Brandon Thompson, a 22-year-old black male, approached the house. Thompson purportedly stopped by to ask another cousin (who did not live at the house) to trade basketball jerseys. After Willis retrieved the CD from his sister, he and Thompson began chatting on the front porch. A few minutes later, Owens, a 16-year-old neighbor and friend of Willis's, came strolling down the street and joined in the conversation.

As the three young men talked on the porch, Owens saw an unmarked police car drive by carrying the defendant police officers dressed in plain-clothes attire. Owens noted that one of the officers gestured like he was asking for marijuana. Willis did not see the unmarked police car drive by. Owens stated that the officers then returned ten to fifteen minutes later, exited their vehicle, and ordered the three young men off of the porch. Willis estimated that the total time that the young men spent talking before being interrupted by the officers was somewhere between five and fifteen minutes.

When the young men reached the sidewalk outside of Willis's home, the officers handcuffed them to one another and searched them. Officer Glowacki then ushered Willis, Owens, and Thompson into the back of the police car and ran their names through the computer system to check for outstanding warrants. While Glowacki stayed

in the police car, Officer Lepine scoured the block with a flashlight for approximately thirty minutes to an hour. After Lepine returned, the two officers spoke outside of the car. Owens heard one of the officers quietly say, "We still got to take it in." The two officers then got in the car and drove the young men to the police station.

When they arrived at the station, the officers placed the young men in a holding area. Ten to fifteen minutes later, Officer Lepine walked in holding two plastic bags containing pink or purple tablets. Lepine asked the young men, "Which one of these do you all want?" All three men said that they did not want either bag and, moreover, that they had never possessed the bags. Officers Lepine and Glowacki then donned rubber gloves and ordered the young men to undress down to their underwear. The officers allegedly searched through all of their clothing and then instructed the young men to remove their underwear, lift their testicles, spread their buttocks, and cough. After the search revealed no contraband, the officers confined the young men. Willis and Owens, as minors, were placed in one holding cell while Thompson was placed in another. Willis and Owens were then released to their families around midnight. It was at that time that they first learned that they were being charged with conspiracy to deliver a controlled substance. They were also ordered to report to juvenile court in three weeks on March 20, 2006.

### B. Defendants' Account

Officers Lepine and Glowacki told a much different story. They testified that they were on patrol when they

received a dispatch at 6:49 p.m., stating that a citizen had reported that a black male was selling drugs at 5528 West Congress Parkway (an address just a few houses down from Willis's residence at 5531 West Congress), and that the drugs were hidden in a nearby vacant lot. In addition to giving the seller's race and sex, the report described the seller as approximately 5'7", 165 pounds, wearing a black hat, black coat, blue jeans, and black gym shoes with a white stripe. The officers did not respond immediately, estimating that they arrived at the 5500 block of West Congress at 7:35 p.m. Importantly, this estimated arrival time was based on a police report that the officers submitted after the fact. At trial, Lepine testified that he and Glowacki recorded the approximate time that they arrived on the scene only after they had returned to the police station.

After their arrival, the officers drove down the block, noting that Willis, Owens, and Thompson were standing in the street and further observing that Thompson had a white stripe on his shoes as described by the dispatch report. The officers also noticed a vacant lot just a few lots removed from where the three men were standing. Given these similarities to the report's descriptions, the officers decided to park on a street north of West Congress and then head back on foot to survey the scene. The officers' presence went unnoticed by the young men because they confined their movements to the narrow gangways that separated the buildings on the north side of West Congress (the gangways they used were between 5530 and 5534 West Congress). From their surveillance positions, the officers testified that

they saw Thompson twice take money from individuals, walk to the vacant lot, and return with items that the officers believed to be drugs. Additionally, the officers claim that they heard Willis and Owens each yell "X" (slang for the drug Ecstasy) to passing cars and "police" when a marked police car drove down the block.

After observing the second alleged drug transaction, the officers returned to their car and drove back to the 5500 block of West Congress. The officers arrested the three young men for conspiracy to sell narcotics, and Lepine immediately searched the vacant lot for the drug stash. He testified that he returned less than five minutes later having found one plastic bag containing nineteen Ecstasy pills. Lepine asserted that he did not search the block any further.

The officers radioed dispatch at 7:41 p.m. to report that they had arrested and were transporting Willis, Owens, and Thompson. The officers testified that after they arrived at the police station, they conducted a custodial search of the three young men—notably finding $114 in cash on Thompson—and then placed Thompson in one holding cell and the two minors, Willis and Owens, in another. The officers denied strip-searching the young men or holding up two bags of pills and asking them which bag they wanted. The officers then wrote up the arrest report and received approval for the charges of conspiracy to manufacture or distribute a controlled substance. The officers also contacted Willis's and Owens's families, and, after fingerprinting and photographing the three young men, the officers released

Willis and Owens into their families' custody at approximately 11:30 p.m.

## C. Procedural Background

As ordered, Willis and Owens, along with their mothers, went to juvenile court on March 20, 2006. Maintaining their innocence, Willis and Owens rejected a deal that would have dismissed the charges after they had completed 300 hours of community service. Nevertheless, the charges were eventually dismissed. Thompson, who was charged with delivery of a controlled substance, pleaded guilty.

Willis and Owens then filed this suit in federal district court against officers Lepine and Glowacki, alleging false arrest and illegal search claims under 42 U.S.C. § 1983, and a malicious prosecution claim under Illinois state law. The case went to trial on January 11, 2011. Before trial, however, the plaintiffs filed two motions in limine: (1) to bar evidence that made reference to the 5500 block of West Congress Parkway as a "high-crime area"; and (2) to bar evidence of Thompson's prior arrests and convictions (including his latest guilty plea in the underlying criminal case). The district court judge granted both of the plaintiffs' motions.

At trial, plaintiffs' counsel went to great lengths to establish Willis and Owens as young men of impeccable character. Indeed, the plaintiffs assert in their appellate brief that "[t]he whole thrust of plaintiffs' case at trial was the credibility of the plaintiffs." To that end, the plain-

tiffs put on evidence of their exemplary community service, strong family ties, abstinence from illicit drug sales and use, and general law-abiding behavior. Following a three-day trial the jury returned a verdict for the defendants on all counts.

The plaintiffs then filed two post-trial motions: one under Federal Rule of Civil Procedure 60(b)(3) for relief from judgment; and one under Rule 59(a) for a new trial. In their Rule 60(b)(3) motion, the plaintiffs argued that the trial was unfair because defense counsel had made an improper speaking objection during the plaintiffs' rebuttal argument in summation, and because defense counsel had allegedly violated the motion-in-limine ruling that prohibited any mention of Thompson's arrests and convictions. The plaintiffs' Rule 59(a) motion was skeletal: the two-page brief incorporated by reference the arguments set forth in the Rule 60(b)(3) motion memorandum and then, in a rather perfunctory manner, recited the Rule 59(a) standard for determining when a new trial is warranted. The district court denied both motions, and the plaintiffs appealed.

## II.

The plaintiffs' appeal focuses primarily on the district court's denial of their post-trial motions; however, they also contend that the district court erred by repeatedly allowing defense counsel to violate the motion-in-limine order not to reference the 5500 block of West Congress as a "high-crime area." We will address each in turn.

### A. Rule 60(b)(3) Motion for Relief from Judgment

We review a district court's decision to deny a Rule 60(b) motion for relief from judgment for an abuse of discretion. *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758 (7th Cir. 2010) (citing *Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 861 (7th Cir. 2009)). We are mindful of the fact that " '[a]buse of discretion' in cases under Rule 60(b) is restricted review indeed. It limits review to cases in which no reasonable person could agree with the district court's decision." *Tolliver v. Northrop Corp.*, 786 F.2d 316, 318 (7th Cir. 1986) (citation omitted). Accordingly, " '[i]t is well-established that Rule 60(b) relief is an extraordinary remedy and is only granted in exceptional circumstances.' " *Wickens*, 620 F.3d at 759 (quoting *Dickerson v. Bd. of Educ.*, 32 F.3d 1114, 1116 (7th Cir. 1994)).

Rule 60(b) lists several reasons for which a court may grant relief from a final judgment, order, or proceeding. Fed. R. Civ. P. 60(b). Subsection (3), the provision on which the plaintiffs rely, allows for relief in the case of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "To obtain relief under Rule 60(b)(3), a party must show that she has a meritorious claim that she was prevented from 'fully and fairly presenting' at trial as a result of the adverse party's fraud, misrepresentation, or misconduct." *Wickens*, 620 F.3d at 758-59 (citations omitted). Here, the plaintiffs' motion focused on alleged incidents of misrepresentation and misconduct by defense counsel at trial.

The plaintiffs first complain that defense counsel made an improper speaking objection during plaintiffs'

counsel's rebuttal argument at summation. The exchange, in relevant part, went as follows:

> **Plaintiffs' Counsel:** Each one of these plaintiffs' witnesses, including the plaintiffs, got on the stand and told you who they are. They're working people. They're honest people. You didn't hear anything about anyone having a criminal record or background or anything negative about anybody. They came and told you the truth. And that's all we can do in our system. That's all we can do. We have this building, we have a judge, we have a jury so we can come and tell you what happened. And the ridicule that [defense counsel] gives about this neighborhood. If these kids were bad kids, you'd know. He would have wanted you to know that they were doing drugs and were gangbangers and they were doing drugs and—

> **Defense Counsel:** Objection, your Honor. We're not allowed to introduce that, and counsel knows that. She threw that in the opening close, and she threw it in again. We can't bring that to the jury.

> **Plaintiffs' Counsel:** Your Honor, I object to that statement. There is nothing here.

> **The Court:** All right. I overrule the objection. Go ahead.

> **Plaintiffs' Counsel:** Thank you. If there were negative things, you would have heard about them. We have got positive things. Good family, church, jobs, and he's complaining about that. He said this is embellishing.

The plaintiffs contend on appeal that defense counsel's objection was a knowing and deliberate attempt to suggest to the jury that there was evidence—which had not been produced during the trial—that Willis and Owens were either drug dealers or "gangbangers." This improper suggestion, the plaintiffs argue, prevented them from receiving a full and fair opportunity to present their case.

As the district court noted, defense counsel's objection implied that there was evidence, which had been barred from trial, that the plaintiffs were drug dealers or gangbangers. But the court had not excluded any evidence of the sort; defense counsel's suggestion to the contrary was, as the district court correctly observed, "highly improper."

Yet we hasten to note that this objection occurred at closing—after the plaintiffs had put forth their evidence during the trial. "A new trial is warranted only if allegedly improper closing remarks depart from the evidence presented at trial and result in substantial prejudice to the opposing party." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 731 (7th Cir. 1999) (citing *Marshall v. Porter Cnty. Plan Comm'n*, 32 F.3d 1215, 1221 (7th Cir. 1994)). Accordingly, as " '[t]his court has repeatedly explained[,] improper comments during closing argument rarely rise to the level of reversible error.' " *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008) (quoting *Miksis v. Howard*, 106 F.3d 754, 764 (7th Cir. 1997)). We believe that this axiom applies with equal force to improper speaking objections made at closing argument. This is especially

true where, as here, any prejudicial effect that the improper remarks may have had on the jury is quickly cured. In this case, the plaintiffs' counsel immediately replied to the objection, "there's nothing here," the judge agreed, and the plaintiffs' counsel was able to continue making her argument. Moreover, the judge's instruction to the jury that statements made by the attorneys are not evidence was sufficient to remedy any harm that may have been caused by defense counsel's objections. These instructions were given both before and after closing arguments. Because we presume that the jury follows the court's instructions, *id.* (citing *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 702 (7th Cir. 2007)), such "curative instructions to the jury mitigate harm that may otherwise have resulted from improper [objections]." *Id.* (citing *Jones*, 188 F.3d at 732). Defense counsel's objection during summation did not prevent the plaintiffs from fully and fairly presenting their case.

The plaintiffs next argue that defense counsel asked numerous questions at trial that violated the court's motion-in-limine ruling that barred all evidence of Thompson's prior arrests and convictions. Specifically, defense counsel asked the plaintiffs whether Thompson was a plaintiff in this case or whether Thompson had filed his own lawsuit. Defense counsel also asked the plaintiffs about why Thompson was in the neighborhood at the time of the arrest and why Thompson was not called as a witness. The plaintiffs argue that defense counsel's violation of the court's ruling prevented them from fully and fairly presenting their case.

As the district court noted, defense counsel's inquiries about Thompson's absence from this case were arguably improper because the answers to such questions could have alerted the jury to Thompson's arrest and subsequent confession to dealing drugs (which was, of course, the precise thing that was precluded by the motion in limine). But we are not convinced that those questions prevented the plaintiffs from fully and fairly presenting their case. As the district court noted, it was the plaintiffs' own trial strategy that led to Thompson's absence from the case. This left the jury to wonder why such a key figure—the plaintiffs' fellow arrestee, no less—was conspicuously absent from the case. In light of the officers' testimony, it would not have been a stretch for the jury to conclude that it was Thompson whom the officers had observed selling drugs. Thus, defense counsel's questions simply highlighted (albeit improperly) an already obvious gap in the plaintiffs' case.[1] Those

---

[1] The plaintiffs point to a juror's note, discovered by plaintiffs' counsel after the trial, as evidence that defense counsel's questions about Thompson prevented the plaintiffs from fully presenting their case. The note asked, "Can we find out what was the disposition of the Brandon Thompson case?" As we just noted, however, this is a reasonable question that a diligent juror might ask when a main person from the case's narrative is absent from the case. It does not suggest that the jury's thoughts were tainted due to defense counsel's inquiries about Thompson. And aside from that, with exceptions not relevant here Federal Rule of Evidence 606(b) clearly prohibits the court from introducing any material that evinces how the jury arrived

(continued...)

questions did not deny the plaintiffs an opportunity to fully and fairly present their case.

Questions about Thompson's activities on the block were not improper at all; indeed, they were inevitable because Thompson's participation was a key part of the story. The plaintiffs admit that Thompson was with them in front of Willis's home and that all three of them were arrested and transported to the police station together. Plaintiffs' counsel obviously recognized the need to explain Thompson's presence, and so she elicited testimony from Willis that Thompson was on the 5500 block of West Congress Parkway for the sole purpose of trading a basketball jersey. What is more, on direct examination plaintiffs' counsel pointedly asked Willis whether he "was involved in a drug transaction on February 26, 2006," and asked Owens whether he was "helping Brandon Thompson sell drugs on your block." The plaintiffs each denied any involvement in drug sales. This testimony directly contradicted the defendants' version of events, which was highlighted by the officers' observation of Thompson's drug transactions as well as by Willis's and Owens's alleged participation in soliciting those transactions. It was thus appropriate for defense counsel to cross-examine the plaintiffs with questions concerning Thompson's activities on the block, and therefore the district court's decision to

[1] (...continued)

at its verdict. *See United States v. Berry*, 92 F.3d 597, 601 (7th Cir. 1996).

allow such questioning cannot provide the basis for relief from judgment.

In sum, the district court did not abuse its discretion in denying the plaintiffs' Rule 60(b)(3) motion for relief from judgment because defense counsel's speaking objection at summation did not prevent the plaintiffs from fully and fairly presenting their case at trial. And defense counsel's questions about Thompson's involvement in this or any other lawsuit did not affect the plaintiffs' ability to fully and fairly present their case. Moreover, questions about Thompson's activities on the block were reasonable given plaintiffs' counsel's own line of questioning. Accordingly, the plaintiffs are not entitled to the extraordinary remedy of relief from judgment.

## B.  Rule 59(a) Motion for New Trial

As we noted above, the plaintiffs' motion for a new trial was quite barren. The plaintiffs recited the standard set forth in Rule 59(a), and then merely incorporated by reference the same attorney-misconduct arguments made in their motion for relief from judgment. After again reciting the Rule 59(a) standard, the plaintiffs requested that the court order a new trial as an alternative to setting aside the judgment. The district court examined the plaintiffs' Rule 60(b)(3) and Rule 59(a) motions together because they contained identical arguments and because "the applicable legal standards are substantially the same."

The plaintiffs now contend that the district court erred in two respects. First, they argue, the district court mis-

takenly held that the two legal standards were sufficiently similar such that the motions could be construed together. Second, as a result of the court's alleged failure to apply the correct standard, the plaintiffs argue that the district court failed to address whether the jury's verdict went against the manifest weight of the evidence.

We review de novo the issue of whether the district court applied the proper legal standard in analyzing a Rule 59(a) motion for a new trial. *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007). A court may only order a new trial if the jury's " 'verdict is against the manifest weight of the evidence, . . . or if for other reasons the trial was not fair to the moving party.' " *Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011) (quoting *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010)). Here, the plaintiffs' threadbare Rule 59(a) motion did not develop any arguments about how the jury's verdict went against the manifest weight of the evidence. Instead, the plaintiffs relied exclusively on the attorney-misconduct arguments from their Rule 60(b)(3) motion. So the only argument that the district court had to consider on the plaintiffs' Rule 59(a) motion is that defense counsel's misconduct resulted in an unfair trial. As we have held before, " '[t]he misconduct of counsel justifies a new trial where that misconduct prejudiced the adverse party.' " *Davis v. FMC Corp.*, 771 F.2d 224, 233 (7th Cir. 1985) (quoting *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1983)). This standard is indeed substantially similar to Rule 60(b)(3)'s "fully-and-fairly" standard; therefore, the

district court did not err in examining the two motions together. And for the reasons set forth in the previous section, the court did not err in refusing to grant a new trial.

But the plaintiffs maintain that the district court should have also considered whether the jury's verdict was against the manifest weight of the evidence. Yet as we noted above, the plaintiffs failed to develop any arguments before the district court that the jury's verdict was against the manifest weight of the evidence. Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough. "Failure to adequately present an issue to the district court waives the issue on appeal." *Kunz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008) (citing *Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002)). Thus, the plaintiffs have waived any argument that the jury's verdict went against the manifest weight of the evidence.

Even if the plaintiffs had not waived that argument, however, the jury's verdict was not against the manifest weight of the evidence. When considering whether the jury's verdict goes against the manifest weight of the evidence, a court analyzes the "general sense of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook Cnty.*, 650 F.3d 631, 633 (7th Cir. 2011) (citations omitted). But "[a] verdict will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th

Cir. 2008) (quoting *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006)). Moreover, "[j]ury verdicts deserve particular deference in cases with 'simple issues but highly disputed facts.'" *Id.* (quoting *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995)).

Here, the plaintiffs argue that the timeline offered by the defendants regarding the surveillance, arrest, and transportation of Willis, Owens, and Thompson was physically impossible and therefore that no rational jury could have believed the defendants' story. Further, the plaintiffs assert that Thompson's appearance was so dissimilar to the description of the alleged drug dealer provided to the defendants by the dispatcher—specifically, that the only matching characteristic was the white stripe on his shoes—that no rational jury could believe that the officers had a legitimate basis for arresting Thompson, Willis, and Owens. Finally, the plaintiffs dispute the defendants' contention that the defendants conducted surveillance from a gangway between 5530 and 5534 West Congress Parkway because two Rottweilers often patrolled that area and would have alerted bystanders had the officers actually accessed that gangway.

The jury's construction of this evidence was rational. The plaintiffs had ample opportunity to cross-examine the defendants on their timeline—the defendants explained that the times listed on their police reports were estimates and that actual events may have taken longer to unfold. This is a reasonable explanation that the jury obviously credited over the plaintiffs' version of

events. The plaintiffs' argument that the defendants unreasonably relied on the white stripe on Thompson's shoe as the sole basis for arresting both him and the plaintiffs is also unavailing. The officers' observation of the white stripe on Thompson's shoe was not a sole basis for arrest—rather, it was a factor that they used in their decision to conduct surveillance. When conducting that surveillance, the defendants testified that they observed Thompson engage in two drug transactions (with the alleged assistance of Willis and Owens). Only then did the officers arrest Thompson, Willis, and Owens. The jury evidently gave this account credence—which it was entitled to do—and thus reasonably concluded that the officers had probable cause to arrest the plaintiffs. And finally, no witness at trial could confirm that the two Rottweilers were actually in the gangway on the evening of February 26, 2006, so the plaintiffs never established that the defendants had to contend with the two aggressive dogs while conducting their surveillance. At bottom, the defendants' explanations for these possible deficiencies in their story are reasonable. The plaintiffs tell a contradictory story that certainly made this a case with "'simple issues but highly disputed facts.'" *Tuelja*, 546 F.3d at 427 (quoting *Latino*, 58 F.3d at 314). The jury reasonably sorted out the conflicting testimony.

The district court properly construed the plaintiffs' Rule 60(b)(3) and Rule 59(a) motions together and rightly concluded that a new trial was not warranted. And because the plaintiffs failed to advance any argument

that the jury's verdict was against the manifest weight of the evidence, the district court did not err in refusing to consider the trial evidence under that standard. Finally, even if the plaintiffs had properly presented that argument to the district court, the jury's verdict was nevertheless based on a rational construction of the evidence.

### C. Motion in Limine Barring Mention of "High-Crime Area"

The plaintiffs contend that it was error for the district court to allow defense counsel to continually violate the motion-in-limine ruling that prohibited any reference to the 5500 block of West Congress Parkway as a "high-crime area." Although the plaintiffs concede that defense counsel did not use the phrase "high-crime area," the plaintiffs argue that defense counsel repeatedly referred to the block as a high-drug area and otherwise insinuated that the block was infected with criminal behavior. Although the plaintiffs highlight several instances during the trial during which they believe that defense counsel violated the motion-in-limine ruling, the plaintiffs objected to just two of those instances. We review the district court's ruling in those two instances for an abuse of discretion. *Bogan v. City of Chicago*, 644 F.3d 563, 571 (7th Cir. 2011) (citation omitted). Besides those two instances, the plaintiffs also contest three other occasions where defense counsel allegedly violated the court's motion-in-limine ruling. But the plaintiffs did not object to these three other alleged violations, so

the plaintiffs have not preserved this argument for appeal. *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 482 (7th Cir. 2000).

We begin with the two instances where the plaintiffs objected at trial and thus preserved their argument for appeal. The first alleged violation of the motion-in-limine ruling occurred when defense counsel was questioning Willis:

> **Defense Counsel:** You have seen people waving down cars on your block, haven't you?
>
> **Willis:** Yes, I have, but I don't know what they are doing.
>
> **Defense Counsel:** You have seen them, but you don't know what they are doing.
>
> **Willis:** No.
>
> **Defense Counsel:** And you have seen them more than once, haven't you?
>
> **Willis:** I don't know.
>
> **Defense Counsel:** And your mother has told you that if you see them on the corner, you just cross the street, right?
>
> **Willis:** Yes.
>
> **Defense Counsel:** Would it be fair to say that you know that they are up to no good with what they are doing?
>
> **Willis:** Yeah. I don't know what they are doing, but they got to be if you told me that.

> **Defense Counsel:** Well do you believe that the people that you are seeing wave down cars and doing these things on your block are up to no good? Do you believe that?
>
> **Plaintiffs' Counsel:** I'm going to object. Could we have a sidebar?
>
> **The Court:** All right. I'll sustain the objection. It is not consistent with his testimony.
>
> **Defense Counsel:** These things that you see, these are going on right around your house, aren't they?
>
> **Willis:** Yes.
>
> **Defense Counsel:** That's all I have, Judge.

Although it is not entirely clear from the transcript, plaintiffs' counsel was presumably objecting to defense counsel's continued inquiry into the depth of Willis's knowledge of suspicious behavior in the neighborhood. The district court sustained plaintiffs' counsel's objection—although not on motion-in-limine grounds—and defense counsel finished his examination of Willis after asking a question about the proximity of the suspicious behavior to his house.

It was appropriate for the district court to allow defense counsel to probe the depth of Willis's knowledge of drug sales and drug-selling techniques on the block. After all, the plaintiffs' defense was based on their ignorance of such matters. Once defense counsel had pursued this line of questioning to its limit, the district court sustained an objection to further inquiry and the examination promptly concluded. This line of ques-

tioning did not violate the motion-in-limine ruling, and therefore district court did not abuse its discretion.

The second alleged violation of the motion-in-limine ruling occurred when defense counsel questioned Michael Willis's mother, Janice Jones-Willis. Specifically, on cross-examination, defense counsel asked Jones-Willis about her knowledge of drug activity on the block and about how many times she had contacted police while exercising her role as a community representative. Plaintiffs' counsel objected to this line of questioning, but the district court overruled that objection. We note that, on direct examination, Jones-Willis had testified that she was a community representative who knew the neighborhood well—"[w]ell enough to know if something was going on in front of my house, [the neighbors] would know to call me, either on my cell or on my home phone." Given this testimony, it was proper for the district court to allow defense counsel to test Jones-Willis's knowledge of drug activity on her block. And when defense counsel pressed Jones-Willis to give an estimate of the number of times that she had called police concerning drug activity on her block, the district court instructed counsel to "[m]ove on." This line of questioning did not violate the motion-in-limine ruling and, therefore, the district court did not abuse its discretion.

The plaintiffs also point to three other instances at trial in which they assert that defense counsel violated the court's motion-in-limine ruling. But as we noted above, the plaintiffs failed to object to these instances and thus

have not preserved this argument for review. If this were a criminal case, we would readily analyze the plaintiffs' arguments under the plain error standard of review. But the plain-error doctrine "is rarely applied in civil cases." *Tuelja*, 546 F.3d at 430 (citing *Stringel v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 415, 421 (7th Cir. 1996)). Indeed, "[p]lain error is only available in civil cases if a party can demonstrate that: (1) exceptional circumstances exists; (2) substantial rights are affected; and (3) a miscarriage of justice will occur if plain error review is not applied." *Id.* (citations omitted). The plaintiffs are not able to show any error at all, let alone satisfy any of these elements.

The three alleged violations of the motion-in-limine ruling to which the plaintiffs point all involve defense counsel's inquiries into drug activity on the block. The plaintiffs essentially ask us to conclude that questions about drug activity on the block are synonymous with painting the block as a "high-crime area." But this is not what the motion-in-limine ruling prohibited. Rather, the court's ruling "bar[red] references to the 5500 block of West Congress Parkway as a high-crime area." In keeping with the district court's ruling, defense counsel never referred to the block as a "high-crime area." And counsel was certainly entitled to elicit testimony about the block's characteristics. Indeed, establishing the frequency of drug activity on the block was relevant because the underlying charges were drug-related and the plaintiffs denied any knowledge of drug activity on their block. If the defense was able establish frequent drug activity (or, much more, the plaintiffs' knowledge

of drug activity), that evidence would tend to discredit the plaintiffs' testimony—a necessary tactic in a case where the parties gave disparate accounts of the events. Accordingly, the district court did not err in allowing defense counsel to question witnesses about drug activity on the block and we need not conduct a review for plain error.

The district court did not abuse its discretion by allowing defense counsel to question Willis and Jones-Willis about their knowledge of drug activity on the 5500 block of West Congress Parkway. The plaintiffs failed to preserve their argument that other instances in which defense counsel questioned witnesses about drug activity on the block violated the district court's motion-in-limine ruling. And because such questioning was proper, we will not employ the plain-error doctrine.

**III.**

The district court did not abuse its discretion in denying the plaintiffs' Rule 60(b)(3) motion for relief from judgment because defense counsel's speaking objection at summation did not prevent the plaintiffs from fully and fairly presenting their case at trial. Further, defense counsel's questions about Thompson's involvement in this or any other lawsuit did not affect the plaintiffs' ability to fully and fairly present their case, and questions about Thompson's activities on the block were reasonable given plaintiffs' counsel's own line of questioning. The district court thus properly denied the plaintiffs' Rule 60(b)(3) motion.

The district court also did not err in construing the plaintiffs' Rule 60(b)(3) motion and Rule 59(a) motion together because the plaintiffs made identical attorney-misconduct arguments in each motion. And because the plaintiffs did not argue that the jury's verdict went against the manifest weight of the evidence in their Rule 59(a) motion, they have waived that argument on appeal. Further, even if the district court had considered the plaintiffs' argument, the jury's verdict was based on a reasonable construction of the evidence and thus did not go against the manifest weight of the evidence.

Finally, the district court did not abuse its discretion by allowing defense counsel to question Willis and Jones-Willis about their knowledge of drug activity on the 5500 block of West Congress Parkway. The plaintiffs also failed to preserve their argument that other instances in which defense counsel questioned witnesses about drug activity on the block violated the district court's motion-in-limine ruling. Such questioning was proper in any event, so we will not review the plaintiffs' argument under the plain-error doctrine. For these reasons, we AFFIRM.